*Fairfield,*
*June, 1851.*

Peck
*v.*
Whiting.

## Peck and others *against* Whiting.

In an assignment under the statute of 1828, the appointment of the assignor, by the trustees, as their agent for the sale and disposal of the property assigned, without the assent of the court of probate, and before an inventory has been returned, renders the assignment fraudulent in law and void, as against creditors of the assignor.

Object of the statute of 1837, (*p.* 366.) authorizing trustees to employ the assignor as their agent.

The cases of *Osborne* v. *Tuller*, 14 *Conn. R.* 529. and *Strong* v. *Carrier*, 17 *Conn. R.* 319. commented on.

This was an action of trover, for the conversion of certain goods, wares and merchandise.

The cause was tried, on the general issue, with notice of special matter to be given in evidence, at *Fairfield, February* term, 1851.

Upon the trial, the plaintiffs claimed title under a deed of assignment, made to them, on the 7th day of *September,* 1848, by *John D. Leavenworth* and *Mark Leavenworth,* partners, for the benefit of their creditors, in pursuance of the provisions of the statute of 1828, relating to the settlement of insolvent estates.  *Stat.* 363.

It was proved and admitted, that at the time of the assignment, the goods described in the declaration, were owned

by the assignors, and were in a store occupied by them, in the town of *Monroe,* and that they were insolvent.

The plaintiffs introduced evidence to prove, that on said 7th day of *September,* they lodged said assignment for record in the office of the court of probate for the district of *Bridgeport,* where the assignors resided; that they accepted the trust, gave bonds according to law, and procured the appointment of appraisers to be made; that on the 11th of *September,* the appraisers commenced taking an inventory of the goods in the store assigned to them; and on the 14th of *September,* they completed an inventory of the goods, but in consequence of the necessary absence of one of the appraisers, the inventory of the residue of the property assigned was not completed until the 28th of *October,* 1848; and that the inventory was returned to and accepted by the court of probate, on the 4th of *November* following.

At the time of the assignment, the assignors delivered to the plaintiffs the possession of the store in which the goods were kept, and the key of the same. On the 16th of *September,* and after the inventory of the goods had been so taken, the plaintiffs obtained from the court of probate an order, authorising them sell to such goods; and on the 18th of *September,* they employed *Mark Leavenworth,* one of the assignors, as their agent, and under their direction and supervision, to *make sale* of the goods, put him in possession of the store, and delivered to him the key. He continued to make sale of the goods until the 28th of *September,* when the defendant, as a deputy sheriff, attached the goods described in the declaration, being nearly all the goods unsold and remaining in the store, by virtue of several writs of attachment in favour of the creditors of the *Leavenworths,* and afterwards disposed of them, in due form of law, in satisfaction of the debts of such creditors.

They further introduced evidence to prove, that the assignors had no other possession of said goods than such as arose from the employment of *Mark Leavenworth,* as aforesaid; that one of the plaintiffs was frequently at the store, superintending the sale of the goods; that it was generally known, that the goods had been assigned to the plaintiffs, and that said *Mark* was acting as their agent, who accounted with the plaintiffs for all the sales by him made.

But it was not proved or claimed, that at the time of his employment, the inventory had been returned to the court of probate, or that that court, by any order or decree, had consented to such employment, or that public notice of such employment had been given, by publishing any advertisement in a newspaper.

But the plaintiffs claimed, that they had a right to employ said *Mark* to sell the goods, without any formal assent of the court of probate; and that the possession of the goods by him, as the agent of the plaintiffs, furnished no evidence that the assignment was fraudulent.

It was proved and admitted, that the sign of the assignors, placed over the door of the store, had never been removed prior to the attachment; but the plaintiffs claimed, that the omission to remove it, was by mistake on their part, and without any design, to induce a belief that the goods had not been duly and legally assigned.

The defendant claimed, that the assignment was fraudulent and void, as against the attaching creditors; that the assignors, at the time of the attachment, and for some days previous, had been in possession of the goods, having the entire management, apparent ownership and disposition of them, by sale; and having introduced evidence in support of this claim, he prayed the court to instruct the jury, that such possession was conclusive evidence of fraud; and that the plaintiffs could not legally employ one of the assignors, as their agent, to sell the goods, without the assent of the court of probate, nor in any other manner than that prescribed in the statute; and if they did, the goods were liable to attachment, when in the *hands of the assignors*, at the suit of their creditors.

Upon these claims of the parties, the court, for the purpose of enabling the jury to determine the questions of fact, involved in the case, instructed them, that the question whether the assignment was *in fact*, fraudulent and void, as against the attaching creditors, was one for them to decide, upon the evidence in the case; that the mere circumstance that the plaintiffs had employed one of the assignors as their agent to sell said goods, without having previously obtained the assent of the court of probate, and the delivery to him of the key of the store, and the possession of the goods, for the *purpose of enabling* him to sell them, as their agent, did

not render the assignment *in law* fraudulent and void, as against attaching creditors; but all these circumstances were proper for their consideration, in determining whether the assignment was *in fact* fraudulent and void.

The jury having returned their verdict in favour of the plaintiffs, the defendant moved for a new trial, for a misdirection.

*Hawley* and *Beardsley*, in support of the motion, contended, That this assignment was void as against attaching creditors, if the assignees permitted the assignor to have the entire management, apparent ownership and disposition of the goods, by sale, without taking the steps required by the statute of 1837. See *Stat.* 366. First, the statute is, in its terms, imperative. Secondly, when a statute directs a thing to be done, in a particular manner, it can be done in no other way. 1 *Sw. Dig.* 11. Thirdly, this is apparent from the objects of the statute. They are three-fold : 1st, to protect the creditors from loss, by reason of the fraudulent disposition, by the assignor, before the inventory is returned to the court of probate. 2dly, to guard against the danger of a dishonest or improper person being selected to dispose of the assigned estate. 3dly, to furnish notice to the world of the relation in which the assignor stands to the assigned estate, while exercising acts which are the ordinary *indicia* of ownership. These are all great objects of public policy. The cases of *Osborne* v. *Tuller*, 14 *Conn. R.* 529. and *Strong* v. *Carrier*, 17 *Conn. R.* 320. do not conflict with this view, but maintain it.

Unless this operation is given to the statute, it will be practically repealed, by this court. The implication from the enactment of the statute, is, that the common law is as we claim it.

*Dutton* and *Loomis*, contra, contended, That the defendant was not entitled to a new trial. In support of this position, they submitted the following considerations. 1. That if all the facts claimed by the defendant had been proved, it would not have made the assignment fraudulent in law. *Osborne* v. *Tuller*, 14 *Conn. R.* 529. *Strong* v. *Carrier*, 17 *Conn. R.* 319. 332.

2. That the lodging of an assignment with the court of probate, was constructive *notice* of such assignment to all the world, and places the personal estate in the same condition as real estate is in, when a deed is recorded in the town-clerk's office.

3. That the statute of 1837 does not apply, as the inventory had not then been perfected and returned.

4. That the statute is not *imperative.* It was passed merely to enable the assignees to employ the assignor as their agent, without being exposed to litigation.

5. That the goods sold had been inventoried, and were sold under and conformably with an express order of the court of probate.

6. That the defendant claimed, that the court should charge the jury in a particular way. The charge prayed for would have been erroneous. Now, the omission to give a charge, which it would have been improper to give, is no ground for a new trial.

7. That the defendant, under the charge given, had the benefit of all the circumstances bearing upon the question of fraud, *as a matter of fact.*

HINMAN, J. The defendant attached the goods in question, as the property of *John D. & Mark Leavenworth.* He found them at the store where said *Leavenworths* had been doing business, in the actual possession, for the time, of *Mark Leavenworth;* and the question is, whether they can be held, by the attaching creditor, against the plaintiffs, who claim them under a previous assignment, pursuant to the statute of 1828, for the benefit of the *Leavenworths'* creditors.

The case turns upon the question whether there was any legal reason for the possession, retained, by one of the assignors, after the assignment. The plaintiffs claim, that the case of an assignment, for the benefit of creditors, under the statute, forms an exception to the rule, requiring a change of possession, in order to prevent a transfer of personal property from being deemed fraudulent. That there is, in this respect, a very marked distinction between an assignment for benefit of creditors, and an ordinary sale *inter partes,* there can be no doubt. Such a distinction was fully established, in the case of *Osborne* v. *Tuller,* 14 *Conn. R.* 529.

and again recognised, in the case of *Strong* v. *Carrier*, 17 *Conn. R.* 319. In those cases, it was held, that the legal presumption of fraud, arising from the continued possession of the assignor, was repelled, by proof, that the requirements of the statute had been complied with. The reason of those decisions was, that the assignee, under the statute, having complied with its terms, had so made himself responsible to the general creditors, that they could not be defrauded, by any disposition he might choose to make of the property. We are well satisfied with those decisions, and do not intend to qualify them, in the least; but we think it very clear, that this case does not fall within them.

There has been no compliance with the terms of the statute, in this case; and we think, the neglect gives all the opportunity that the most dishonest debtor could desire, to defraud his creditors, should the course taken in this case be sustained. In the case of *Strong* v. *Carrier*, it was held, that a general assignment of all a debtor's estate, without any specification of it, was good, under this statute. This was upon the ground, that the assignment was made in reference to the inventory, which the law directs the trustee to make and return to the court of probate. And the court say, that the deed is the introductory measure, to be completed, by the return of the inventory, which then becomes parcel of the proceedings, and may be treated as if attached to it. When this is all done, it is obvious, that the creditors can have no right to complain of any disposition the trustee may make of the property. If the judge of probate has done his duty, in taking a sufficient bond, the creditors are always secure, to the full extent of the property assigned. The assignment conveys it to the trustee, for their benefit; the inventory specifically shows what it is, and that it has come to the trustee's hands; and the bond secures them against any improper disposition of it.

But, before the inventory is returned, the bond, in very many cases, if not in most of them, would be of little practical value; as a statement of the facts, as we suppose they existed in this case, will show. A general assignment is made of a stock of goods in a country store, without any specification of them. Obviously, no one but the assignor can know what property was conveyed; and very probably

*Fairfield,*
June, 1851.

Peck
*v.*
Whiting.

he would not. If under such circumstances, he is left in possession, retailing the goods from the store, as before the assignment, it is scarcely to be expected, that he would be very careful to account for it all. The temptation to make use of the avails, as he had been accustomed to do before the assignment, would, with most men, be irresistible. By a statute passed in 1837, (*Rev. Stat.* 366.) trustees, under the act of 1828, are authorized, after the return of the inventory, to appoint, with the consent of the court of probate, the assignor, as his agent, to make sale of the estate. The precise object of this statute, we are aware, is not very apparent. It was passed before the case of *Osborne* v. *Tuller* was decided, and, perhaps, it was thought, that without some such provision, the employment of the assignor, as an agent, would, in all cases, be deemed fraudulent. However this may be, we think it entitled to some consideration; and, to give it any effect, it is necessary to hold, that the assignor cannot act as the agent of the trustee, in any case, before the inventory is returned. It is apparent, we think, that such was the understanding of the legislature; and in this view of it, the statute is entitled to respect, as a legislative construction of the common law, on the subject. The judge at the circuit, for the purpose of enabling the jury to pass on the questions of fact involved in the case, instructed them, that the employment of one of the assignors to sell the goods, and the delivery to him of their possession, for the purpose of enabling him to sell them, as their agent, did not render the assignment, in law, fraudulent, as against attaching creditors. This, inasmuch as it was not proved, or claimed, that any inventory of the assigned goods had been returned to the court of probate, was erroneous. We think this omission to perfect the inventory, before the employment of the assignor as agent to sell, did render the assignment fraudulent in law and void, as against creditors; and the jury should have been so instructed. On this ground, we advise a new trial.

In this opinion the other Judges concurred.

**New trial granted.**