The opinion of the Court was delivered by
Bermudez, C. J.
The defendants appeal from a judgment condemning them to pay three years’ State taxes, aggregating over six thousand dollars.
They resist payment, averring that they are exempt from such taxes, by reason of the purchase made in 1879 of the property, franchises and immunities of the Vicksburg, Shreveport & Texas Railroad Company, chartered by the legislature in 1853, (Act 228).
They claim that, by the second Section of the Act of Incorporation, that Company was relieved from the payment of all and any taxation from the beginning of its existence, and was to continue so during ten years after the completion of the road within State borders.
We do not propose to determine whether the defendants have acquired the exemption claimed, for the reason that, if the first Company did not own it, the defendants did not acquire it. Pretermitting *955 that and the several questions, save one, which were presented and argued by the able counsel on both sides, we will proceed to consider the. sole, main issue, which the case offers, which is:
Whether the exemption granted in 1853 by the State, conceding it arguendo to have enured to the defendants, does or not relieve them from taxes falling due before the completion of the road, which is as yet unfinished, and will so remain for some time.
The Section relied upon reads :
“That the capital stock of said Company shall be exemptfrom taxation, and its roads, fixtures, workshops, warehouses, vehicles of transportation, and other appurtenances, shall be exempt from taxation for ten years after the completion of said road within the limits of this State.”
In the case/ of Baton Rouge G. T. & O. R. R. Co. vs. Kirkland, Sheriff, 33 A. 622, an identical question was presented, which ive solved, deciding that the Company was not entitled to the exemption asked.
The candid and respectful manner in which the. opinion in that case was criticised by the counsel for the defendants, in their printed, oral 'and manuscript argument, has proved a cause of satisfaction to us, as it has furnished us the opportunity of listening to valuable considerations which had not been urged in the previous case, and of reviewing an important ruling which might have been erroneously made.
■ The claim now is: that the exemption accorded in 1853, and which has passed to the defendants, exonerates them from taxe-s as well before as after the completion of the road, but not for more than ten years afterwards.
If this pretension were recognized, the second Section would be made toread that the property of the Company “ shall be exempt from taxation,” from the creation of the corporation and “ for ten years after the completion of said road within the limits of the State.”
It .is a principle so universally recognized, that exemption laws must be construed strictly, that the mere announcement of the proposition establishes it. It applies not only to general laws, but also to special enactments, such as charters of corporations of any class. All property must be taxed, except such as is expressly relieved from the burden either by valid federal or local legislation.
It is likewise rudimentary, that however liberal the civil law may be in the interpretation of language used by the sovereign, (Dornat, Tit. 1, Sec. ii, Rule xvii.) it is an admitted canon of construction, that when the sovereign grants, he does so munificently and unequivocally, and that when a serious doubt arises as to what was intended by the sovereign, that doubt is fatal, and the plain meaning must be adhered to.
*956 In 21 Penn. Statute, 22, it was said by Chief Justice Black:
“ In the construction of a charter, to be in doubt is against the corporation. If the usefulness of the Company would he increased by extending, (its privileges) let the legislature see to it, but remember that nothing but plain English words will do it.”
Referring to that decision, Cooley, C. L. p. 495, § 395, says : “ This is the sound doctrine., and should be vigilantly observed and enforced.” V. Bradley vs. N. Y. & N. H. R. R. Co., 21 Conn. 306.
• In 22 Wall. 575, the U. S. Supreme Court said: “ The taxing power is vital to the functions of the government. It helps to sustain the social compact, and to give it efficacy. It is intended to promote the general welfare. It readies the interests of every member of the community. It may he restrained by contract in special eases, for public good, when such contracts are not forbidden. But the contract must he shown to exist. There is no presumption in its favor. Every reasonable doubt should he resolved against it. Where it exists, it is to be rigidly scrutinized and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require. It is in derogation of public rig-lit, and narrows a trust created for the' good of all.” Affirmed and reiterated in 93 U. S. 597.
In the case of the Fertilizing Co. vs. Hyde Park, 97 U. S. 666, involving a legislative contract, Mr. Justice S wayne said:
“ The rule of construction in this class of cases is, that it shall be most strongly against the corporation. Every reasonable doubt is to he resolved adversely. Nothing is to he taken as conceded hut what is given in unmistakable terms, or by an implication equally clear. The affirmative must be shown. Silence is negative, and doubt is fatal to the claim. The doctrine is vital to the public welfare. It is axiomatic in the jurisprudence of this Court.” 24 How. 301; 22 Wall. 527; 93 Otto, 595.
Exemptions are granted either by general or by special laws. When they are granted as a gratuity, as a bounty, they can - he revoked at pleasure; while when they enter into and form part of a contract in the shape of a charter, they must continue in force as agreed upon.
The rules of construction, in both cases, are the same, as to meaning and scope, but obviously differ as to duration. In the last case, the time for which the exemption was consented, must be strictly construed, and must be neither extended nor restricted.
No rule is better settled than that charters of incorporation are to he construed strictly against the corporations. The just presumption in every such case is, that the State has granted in express terms all that it designed to grant at all. See 82 111. 177; 21 Conn. 206; 1 Black. 358; 19 Penn. 144; 10 Burr, 442; 4 Peters, 514; 10 Pet. 420; 41 Md. *957 50 ; 9 Ga. 213; 21 Penn. St. 22; Grant on Corp. 38 ; Field on Corp. 53; Cooley on C. L. 395, 396; Potter’s Dwarris on Stat. 256-7-8, pp. 49, 50; Sedgwick Const, of Stat. and C. L., 190-196, 286, 250.
In a recent case decided by us at New Orleans, we had occasion to apply those principles, denying an extension of corporate existence for 25 years, which did not clearly result from the acts of incorporation. New Orleans & Carrollton R.R. Co. vs. New Orleans, 34 An. p. 429.
It is another axiom, that where a law or contract is clear and free from all ambiguity, the letter of it is not to be disregarded, under pretext of pursuing its spirit. R. C. C. 13.

Quoties in verbis nulla est ambiguitas, ibi milla expositio contra verba fienda est.

The rule is not to be disputed, that in a doubtful case, an agreement is interpreted in favor of him who has contracted the obligation. R. C. C. 1957.

In dubiis semper quod minimum sequimur.

When the text relied upon in 33' An. was first presented to our con-sideration, we felt no hesitation to read it so, that the exemption claimed had not yet begun to run, and would not do so unless the road was first completed, and then for ten years only afterwards. Consideration, favored by the light thrown on the subject by the defendants, has not convinced us that we then erred, but has served to strengthen us in our previous convictions.
We find the letter of the text perfectly unambiguous, and such as requires no interpretation at our hands.
We are told that the intention of the legislature was to confer an exemption, from the adoption of the charter until after ten years from the completion of the road.
The intention of the law giver, as well as that of contracting parties and of testators, is to be ascertained, not by what persons concerned in profiting by advantages claimed, say, or affirm it is, but it is to be gathered and deduced from the words or language used for the purpose of garbing the thought, the intention.
In such cases, we are to ascertain, not quod voluit, sed quod dixit; •in other words, we are' to ascertain quod voluit, by interpreting quod dixit.
It is admitted that this intention is not to be found expressed in its fulness in the text invoked, which on its face possibly justifies the meaning already attached to it, but it is insisted that such intention must be searched by inquiry into the manner in which the State and the defendants have treated the provision of the law in question. It is insisted that if this be done, the Court will conclude in favor of the exemption, as it appears clearly, that from 1853 to 1877, the State *958 never dreamed to levy any tax on the property of the corporation, and that in the casé of State vs. Morgan, 28 An. 482, affirmed in 3 Otto, 222, in which a similar dispensation existed, and an exemption was re-: sisted, it never entered the mind, either of the Attorney Genera], or of the Court, to read the exemption clause as a qualified one, to take-effect only after the termination of the road.
The patent intention of the legislature was to exempt the property only after the completion of the work. Its occult or lateral intention not appearing, must be deemed as conducive only to that indulgence or immunity.
If, for the purpose of eking out the motives which induced the legislature to make the grant, it was legitimate to invade, as the defendants have assumed to do, the field of conjectures or speculations, it might be advanced as a proposition more than plausible, that in according the immunity the State proposed to secure a prompt execution of the work, and to place the beneficiaries of her bounties in the impossibility of defeating her object, by never finishing the road, in never reaching, though approximating its terminus.
Besides, how can it be claimed that the State meant to exempt from the inception of corporate existence up to ten 3-ears after consummation of the object in view, when there is not to be found a solitary instance in which such concession or immunity ever was consented by the. State "t A reference to exemptions granted in other cases, show that they were allowed to take place after the road had been entirely finished. It is not to our knowledge that such exemption was ever granted out Of the State, except on the expressed condition that the work would have to be done within a limited and fixed period.
In other respects, it is enough to answer, that the omission of officers to perform that which it is their duty to accomplish, however long the suspension, cannot be considered as justified by law, or by the State, where no law or authority is produced in support of the dereliction. The abstention of those officers from levying a tax, at best, if sanctioned by some unknown or mysterious higher authority, can onty be viewed as inspired by a spirit of benevolence in favor of an organization which had labored under great embarrassments, and sustained considerable injury and loss. The resumption of the privilege of taxation was the mere exercise of a legitimate right.
If the inaction of such officers could produce the effect claimed, the logical consequence would be the lodging into their hands of the veiy power of exemption which the legislature alone can validly wield, and to confer on them effectual authority to amplifj>- restricted immunities consented by the law giver.
*959 In answer to the other objection, it will suffice to remark that it . does uot appear that there was any necessity of raising, and if raised, of determining the point of exemption, as the Court held that the exemption claimed was personal, inalienable, could not he, and, had not been transferred. 28 An. 482 ; 3 Otto, 222.
To conclude with the defendants would be to inject and incorporate into the Section a most important pro-vision, which was not placed in it by the legislature, and which this Court has not the power of interpolating into it, to auy extent.
We think that the expressed intention of the legislature was to provide that the property of the corporation should be exempt during ten years, to begin.after the completion of the road within the borders of the State, and that previous to such completion it should not be exempt from taxation.

Male dicta expositio guce comnnpit textum.

It is unnecessary to determine, in this controversy, whether the exemption passed or not to the defendants. When the road will have been completed, and an attempt is made to collect a tax from them, it will he time enough to decide the question.
We find no error in the judgment appealed from, which is affirmed with costs.