## MARILYN CARROLL v. ABSOLUTE TANK REMOVAL, LLC

Superior Court, Judicial District of New Haven

File No. CV-02 0468856S

Memorandum filed September 16, 2003

*Biller, Sachs, Raio & Bonadies*, for the plaintiff.

*Morrison, Mahoney & Miller*, for the defendant.

BLUE, J. Perhaps more than any other common-law cause of action, the tort of private nuisance eludes exact definition. A nineteenth century English judge observed that the "cause of action is immersed in undefined uncertainty." *Brand* v. *Hammersmith & City Railway Co.*, L.R. 1867 2 Q.B. 223, 247 (Ex. Ch. 1867). More recently, our Supreme Court referred to the law as an "impenetrable jungle . . . ." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 355, 788 A.2d 496 (2002). *Pestey* clarifies the law of private nuisance considerably but sends conflicting signals on the question now before the court: must a private nuisance originate outside the land that it affects? For reasons that are largely historical in nature, the answer to this question is yes.

The plaintiff, Marilyn Carroll, alleges that she is the owner of residential property in Madison. In January,

2002, she contracted with the defendant, Absolute Tank Removal, LLC (Absolute), to remove an existing oil tank on her property and install a new aboveground tank. Absolute did so and filled the new tank with oil. About nine days later, Carroll noticed that the oil tank gauge was below one-quarter full. She alleges that Absolute installed the tank improperly, resulting in the contamination of her property with approximately 300 gallons of fuel oil.

Carroll commenced this action by service of process on August 31, 2002. Her amended complaint consists of seven counts, only one of which is in question here. The third count alleges that Absolute's conduct created a nuisance.

On April 3, 2003, Absolute filed the motion to strike now before the court. The motion asserts that the third count is legally insufficient. (The motion challenges other counts as well, but those challenges were withdrawn at argument.) The motion was heard on September 15, 2003. The sufficiency of the third count must now be addressed.

For largely historical reasons, nuisance is a land based tort. "Initially, the assize of novel disseisin was available for a complainant whose enjoyment of his free tenement was disturbed by the defendant." *Adkins* v. *Thomas Solvent Co.*, 440 Mich. 293, 307, 487 N.W.2d 715 (1992). "But to trouble a man in the exercise of his rights over land without going so far as to dispossess him was a trespass or a nuisance according to whether the act was done on or off the plaintiff's land." F. Newark, "The Boundaries of Nuisance," 65 L. Q. Rev. 480, 481 (1949). In geographic terms, the tort of nuisance "arose when occupants of neighboring land had a dispute, typically over the proper use of the defendant's land." *Adkins* v. *Thomas Solvent Co.*, supra, 307.

The facts of *Pestey*, which clarifies the Connecticut law of private nuisance, are those of a classic nuisance case. The claim before the court there involved noxious and offensive odors from the defendants' dairy farm that interfered with the plaintiffs' use and enjoyment of their nearby property. In this sense, *Pestey* is strikingly similar to the earliest nuisance case in Connecticut jurisprudence, *Whitney* v. *Bartholomew*, 21 Conn. 212 (1851), involving smoke from a blacksmith's shop that rendered the plaintiff's adjacent dwelling house unfit for habitation. *Pestey* and *Whitney* are cases involving the use of one property that interferes with the use or enjoyment of a separate property. At least in a formal sense, the present case—in which the injury originates on the very property affected—is distinguishable.

Is this a distinction with a difference? *Pestey*, as mentioned, sends conflicting signals on this question. Part of *Pestey*'s analysis focuses simply on the injury to the plaintiff's land. The court concluded: "[I]n order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property." *Pestey* v. *Cushman*, supra, 259 Conn. 361. That test is not facially inconsistent with the claim Carroll makes here, for she alleges that Absolute's conduct (resulting in a significant discharge of oil) was the cause of an unreasonable interference with her use and enjoyment of her property. Shortly before articulating this test, however, *Pestey* states: "The proper focus of a private nuisance claim for damages . . . is whether a defendant's conduct, *i.e.*, *his or her use of his or her property*, causes an unreasonable interference with the plaintiff's use and enjoyment of his or her property." (Emphasis added.) Id., 360. Although *Pestey* does not incorporate the requirement of the defendant's use of separate property in its restatement

of the elements of the tort, it does not expressly dispense with this requirement, either. The issues presented here simply did not arise because the facts before the *Pestey* court involved separate properties.

Neither the parties nor the court, however, have discovered any case allowing recovery on a common-law private nuisance claim for an injury to a property that originated on that property.[1] *Philadelphia Electric Co.* v. *Hercules, Inc.*, 762 F.2d 303 (3d Cir.), cert. denied, 474 U.S. 980, 106 S. Ct. 384, 88 L. Ed. 2d 337 (1985), is the leading authority on the subject, and that authority is not helpful to Carroll. The property owner in *Philadelphia Electric Co.* brought a nuisance action against a corporation whose predecessor in interest had owned and contaminated the plaintiff's land. Although the United States Court of Appeals for the Third Circuit agreed that the defendant owed a duty to its neighbors, the court held that the same duty did not apply to the contaminated land in question. The reason, it explained, was historical in nature. Historically, private nuisance law has been used "as a means of efficiently resolving conflicts between *neighboring,* contemporaneous land uses." (Emphasis in original.) Id., 314. "All of the very useful and sophisticated economic analyses of private nuisance remedies published in recent years proceed on the basis that the goal of nuisance law is to achieve efficient and equitable solutions to problems created by *discordant* land uses." (Emphasis in original.) Id. This analysis has been widely accepted by the courts. See *Moore* v. *Texaco, Inc.*, 244 F.3d 1229, 1232 (10th Cir. 2001); *Rosenblatt* v. *Exxon Co.*, 335 Md. 58, 80, 642 A.2d 180 (1994); *Donald* v. *Amoco Production Co.*, 735 So. 2d 161, 170 (Miss. 1999); *Hydro-Manufacturing,*

---

[1] California, uniquely among the jurisdictions, allows such recovery, but only because the California legislature has enacted a statutory remedy going beyond the common law. *Mangini* v. *Aerojet-General Corp.*, 230 Cal. App. 3d 1125, 1134–35, 281 Cal. Rptr. 827 (1991).

*Inc.* v. *Kayser-Roth Corp.*, 640 A.2d 950, 957 (R.I. 1994). I adopt it here.

In conclusion, because the third count fails to allege that the injury to the plaintiff's property originated outside the land affected, it does not state a cause of action for common-law nuisance. The motion to strike is, therefore, granted as to the third count of the plaintiff's amended complaint.