STATE OF CONNECTICUT *v.* DION BUSH
(SC 15888)

Callahan, C. J., and Norcott, Katz, McDonald and Peters, Js.

Argued April 21—officially released July 6, 1999

*Dante R. Gallucci*, special public defender, for the appellant (defendant).

*Richard F. Jacobson*, supervisory assistant state's attorney, with whom, on the brief, was *Cornelius P. Kelly*, assistant state's attorney, for the appellee (state).

*Opinion*

CALLAHAN, C. J. The defendant, Dion Bush, appeals from a judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a) and conspiracy to commit murder in violation of General Statutes §§ 53a-48[1] and 53a-54a (a). On appeal,[2] the defendant claims that the trial court improperly: (1) denied his motion to sever his trial from that of his codefendant; (2) admitted evidence relating to his membership in a gang; and (3) admitted evidence

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . .

"(c) Murder is punishable as a class A felony . . . ."

General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

of verbal threats made against state's witnesses as evidence of the defendant's consciousness of guilt. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On September 25, 1993, the victim, Norman Jones, a member of the Brotherhood street gang, was socializing at a party in Bridgeport. Antoin Pettway also was present at the party. At some point during the evening, the victim and Pettway left the party together and went to the Pequonnock housing project, where Pettway had an apartment. Upon arriving at the housing project, Pettway entered his apartment building. The victim, who did not live at Pequonnock, remained directly outside the building's front entrance.

Pettway encountered Robert Robertson, a member of the Bush Mob gang, in the building's lobby. Robertson asked Pettway if the person outside the building's entrance was Jones, and Pettway responded affirmatively. Both men then left the lobby. Robertson entered the stairwell and went upstairs, while Pettway took the elevator to his apartment.

Shortly thereafter, Robertson and the defendant, who also was a member of the Bush Mob gang, entered the lobby from the stairwell. The two men, each of whom was armed with a handgun, then went to the building's front entrance and pointed their guns in the direction of the victim. Robertson diverted his aim from the victim and fired once into the air. The defendant, however, fired several rounds at the victim, stopping only when his gun had been emptied. As the defendant and Robertson then retreated through the lobby, Bernard Johnson, who had been in the lobby at that time, asked them why they had shot at the victim. One of the two

men responded that they had done so to retaliate for the recent murder of a Bush Mob gang member.[3]

Within minutes, Bridgeport police officers arrived and found the victim lying on the ground a short distance away from the entrance of the building. He had been shot once in the back and was unconscious. He subsequently was transported to Saint Vincent's Medical Center in Bridgeport, where attempts to save his life proved unsuccessful. Additional relevant facts and procedural history will be supplied as necessary.

I

The defendant's first claim is that the trial court improperly denied his motion to sever his trial from that of his codefendant, Robertson. A careful examination of the record reveals that this claim was not preserved at trial.

Prior to trial, the state moved to consolidate the trials of the defendant and Robertson. Neither the defendant nor Robertson objected to that motion, and thereafter, the trial court granted it. Immediately before the start of the state's case-in-chief, however, Robertson moved to sever the trials on the ground that there was a *potential* for antagonism between his defense and the defendant's.[4] Although both the defendant and Robertson planned to assert that they had not been present when the victim was shot, Robertson claimed that he *might* pursue a different strategy during the trial if, as anticipated, the state presented evidence from which the jury

---

[3] A member of the Bush Mob gang, identified at trial only as Two-Tone Timmy, previously had been killed, allegedly by a member of the Brotherhood gang.

[4] *Robertson* also moved for severance on the ground that certain statements made by the defendant concerning the shooting were admissible only against the defendant and would cause him substantial prejudice. The trial court, however, determined that such statements were admissible against both the defendant and Robertson, and therefore, concluded that *Robertson* was not entitled to severance on that ground.

could infer that the defendant had fired the shot that had killed the victim. Thereafter, the defendant also moved for severance claiming that, if Robertson were to change his theory of defense during trial, there was a *potential* for antagonism between his defense and Robertson's. The trial court determined that, because at that time there was no conflict between the defenses of the defendant and Robertson, the motions for severance on the basis of antagonistic defenses were premature. The court, therefore, denied those motions. In so doing, however, the court specifically stated that both the defendant and Robertson could renew their severance motions if an actual conflict between their defenses arose during trial. Neither the defendant nor Robertson renewed his motion for severance on the basis of *antagonistic defenses* at any time thereafter.[5]

"This court is not bound to consider claims of law not made at the trial." (Internal quotation marks omitted.) *State* v. *Brice*, 186 Conn. 449, 457, 442 A.2d 906 (1982). In order to preserve an evidentiary ruling for review, trial counsel must object properly. *Skinner* v. *Skinner*, 154 Conn. 107, 110, 221 A.2d 848 (1966); see also Practice Book § 5-5. "Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a

---

[5] On several occasions during the trial, *Robertson* renewed his motion for severance on the ground that certain additional statements made by the defendant were not admissible against him and caused him undue prejudice. The trial court determined that, although those additional statements were not admissible against Robertson, they were not unduly prejudicial, and therefore, *Robertson* was not entitled to severance on that ground.

reviewable ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Robinson*, 227 Conn. 711, 739–40, 631 A.2d 288 (1993), quoting *State* v. *Braman*, 191 Conn. 670, 684, 469 A.2d 760 (1983). "Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Adams*, 176 Conn. 138, 144, 406 A.2d 1 (1978); see also Practice Book § 60-5.

These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. *State* v. *Jones*, 193 Conn. 70, 88, 475 A.2d 1087 (1984). Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush. *State* v. *Brice*, supra, 186 Conn. 457. Because the defendant never objected to the trial court's denial of his initial motion for severance, nor renewed his motion for severance at any time during the trial as instructed by the court, we decline to review the claim.

## II

The defendant's next claim is that the trial court improperly admitted evidence regarding the defendant's membership in the Bush Mob gang. Our careful examination of the record, however, reveals that, on several occasions, testimony relating to the defendant's membership in the Bush Mob gang was admitted into evidence without objection. For the reasons set forth in part I of this opinion, therefore, we decline to review the defendant's unpreserved evidentiary claim.

## III

The defendant's final claim is that the trial court improperly admitted portions of taped telephone conversations between the defendant and certain unidentified third parties, during which plans to intimidate

witnesses were discussed. Specifically, the defendant maintains that the prejudicial impact of the excerpted conversations introduced by the state outweighed their probative value. We disagree.

During trial, two witnesses, Johnson and Maria Caban, testified that they had been threatened by persons associated with the defendant. Thereafter, the state produced three tape-recorded telephone conversations between the defendant and unidentified third parties. The conversations indicated that the defendant had been involved in plans to threaten Johnson and Caban in an attempt to influence their testimony. Because each of the tape-recorded conversations was approximately fifteen minutes in duration and contained dialogue not relevant to the case, the state sought to introduce only the portions of the tapes that reasonably could have been interpreted to include plans to threaten the witnesses. Of the nearly forty-five minutes of conversation contained on the tapes, the excerpted portions introduced by the state lasted less than ten minutes.

The defendant objected to the admission of the excerpted tape recordings, claiming that they contained several vulgar epithets and, therefore, were more prejudicial than probative. Consequently, the defendant requested that those epithets be redacted from the tapes before the tapes were to be played for the jury. The trial court, however, reasoned that the prejudicial impact of the excerpted conversations did not outweigh their probative value and overruled the defendant's objection.

"We have identified at least four circumstances where the prejudicial effect of otherwise admissible evidence may outweigh its probative value: (1) where the facts offered may unduly arouse the jury's emotions, hostility

or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the [party against whom the evidence has been offered], having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it. *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982); *State* v. *Greene*, 209 Conn. 458, 478–79, 551 A.2d 1231 (1988)." (Internal quotation marks omitted.) *Potter* v. *Chicago Pneumatic Tool Co.*, 241 Conn. 199, 265–66, 694 A.2d 1319 (1997), quoting *Grayson* v. *Wofsey, Rosen, Kweskin & Kuriansky*, 231 Conn. 168, 193, 646 A.2d 195 (1994). Moreover, we previously have stated that "[t]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 17, 629 A.2d 386 (1993). "Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Mejia*, 233 Conn. 215, 239, 658 A.2d 571 (1995).

On appeal, the defendant does not claim that the introduction of the excerpted conversations consumed an undue amount of time, or that he had no reasonable ground to anticipate the introduction of such evidence. Moreover, upon a careful review of the record, we conclude that there is no reasonable possibility that the epithets used by the defendant during conversations in which he planned to threaten the witnesses unduly aroused the jury's emotions or unduly distracted the

jury from the main issues in the case. See *State* v. *Robinson*, supra, 227 Conn. 731–32; *State* v. *Woodson*, supra, 227 Conn. 15–28; *State* v. *Holliman*, 214 Conn. 38, 51, 570 A.2d 680 (1990). Consequently, the trial court acted within its broad discretion by admitting into evidence the portions of the tape-recorded conversations offered by the state.

The judgment is affirmed.

In this opinion the other justices concurred.