JAMES PESTEY ET AL. *v.* NATHAN R. CUSHMAN ET AL.
(SC 16559)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued September 24, 2001—officially released February 5, 2002

*Jack G. Steigelfest*, with whom were *John Stephen Papa* and, on the brief, *Constance L. Epstein*, for the appellants (defendants).

*Linda L. Morkan*, with whom, on the brief, were *Eric Lukingbeal* and *James P. Ray*, for the appellees (plaintiffs).

*Opinion*

VERTEFEUILLE, J. The issues in this common-law private nuisance action arise out of the defendants' operation of a dairy farm near the plaintiffs' home. The principal issues in this appeal are whether: (1) the trial

court properly instructed the jury with respect to the unreasonableness element of the common-law private nuisance claim; (2) a property owner may testify as to the reason for the diminution in value of his or her property; (3) the trial court properly admitted, under the learned treatise exception to the hearsay rule, evidence from a livestock waste management handbook; and (4) the evidence at trial was sufficient to support the jury's finding that the operation of the defendants' farm was the proximate cause of the offensive odors that affected the plaintiffs' property. We answer all four questions in the affirmative. Accordingly, we affirm the judgment of the trial court.

The plaintiffs, James Pestey and Joan Pestey, brought this action against the defendants, Nathan R. Cushman, Nathan P. Cushman and Cushman Farms Limited Partnership, seeking money damages and injunctive and declaratory relief. After a lengthy trial, the jury returned a partial verdict for the plaintiffs for $100,000 in damages. See footnote 2 of this opinion. The trial court denied all of the defendants' posttrial motions, and rendered judgment in accordance with the jury's verdict. The defendants appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

The jury reasonably could have found the following facts. The plaintiffs' home is situated on property they own located along the west side of Route 87 in North Franklin. The defendants own and conduct farming operations on a large tract of land on the opposite side of Route 87, approximately one third of one mile north of the plaintiffs' property. In 1990, the defendants constructed a 42,000 square foot free stall barn and milking parlor on their land to house a herd of dairy cows and a pit in which to store the manure generated by the herd.

The plaintiffs first noticed objectionable odors emanating from the defendants' farm in early 1991, after

the construction of the new barn. The odors were, at first, nothing more than the typical stercoraceous odors generated by a farm containing livestock. Over time, however, the odors became substantially more pungent and their character changed as they took on a sharp, burnt smell. In 1997, the defendants installed an anaerobic digestion system on their farm to process the manure generated by the dairy herd. The system was designed to mimic in a controlled manner the anaerobic process that occurs in nature. Under this process, manure is fed into the digester, which, through the use of high temperature and bacteria, breaks the organic compound into its constituent parts. The end result of a properly functioning anaerobic digestion process is the production of a low odor biosolid and a gaseous mixture that can be used as an energy source to power the digester's generators. Following the installation of the digester, the character of the odors affecting the plaintiffs' property changed again, becoming more acrid and evincing the smells of sulphur and sewage. This change was caused by the digester being either undersized or overloaded, which resulted in partially digested, higher odor manure being released at the end of the anaerobic digestion process. At times, the odors emanating from the defendants' farm were so strong that the smell would awaken the plaintiffs during the night, forcing them to close the windows of their home. Further facts will be set forth where relevant.

The plaintiffs commenced this action in three counts seeking monetary damages and injunctive and declaratory relief. In the first count of the amended complaint, sounding in common-law private nuisance, the plaintiffs alleged that the defendants' farm generated offensive odors that unreasonably interfered with the plaintiffs' use and enjoyment of their property. The plaintiffs further alleged in this count that the defendants' farm operation was not entitled to the protections of General

Statutes § 19a-341,[1] which concerns the right to farm and protects farms from nuisance claims, because the odors resulted from the defendants' negligent operation of their farm. Only this first count was ultimately submitted to the jury to decide.[2]

In addition to returning a plaintiffs' verdict, the jury answered interrogatories demonstrating that it specifically found that the offensive odors emanating from the defendants' farm unreasonably interfered with the plaintiffs' enjoyment of their property, that the interference was continuous, and that the odors had a natural tendency to inflict harm by interfering with the plain-

---

[1] General Statutes § 19a-341 provides in relevant part: "(a) Notwithstanding any general statute or municipal ordinance or regulation pertaining to nuisances to the contrary, no agricultural or farming operation, place, establishment or facility, or any of its appurtenances, or the operation thereof, shall be deemed to constitute a nuisance, either public or private, due to alleged objectionable (1) odor from livestock, manure, fertilizer or feed . . . provided such agricultural or farming operation, place, establishment or facility has been in operation for one year or more and has not been substantially changed, and such operation follows generally accepted agricultural practices. Inspection and approval of the agricultural or farming operation, place, establishment or facility by the Commissioner of Agriculture or his designee shall be prima facie evidence that such operation follows generally accepted agricultural practices. . . .

"(c) The provisions of this section shall not apply whenever a nuisance results from negligence or wilful or reckless misconduct in the operation of any such agricultural or farming operation, place, establishment or facility, or any of its appurtenances."

[2] In the second count, seeking equitable relief, the plaintiffs alleged that the offensive odors generated by the defendants' farm violated General Statutes § 22a-16, which prohibits the "unreasonable pollution, impairment or destruction" of the state's air, water or other natural resources. Since neither party requested, pursuant to Practice Book § 16-10, that the jury determine the factual issues of the equitable claim, the court retained its authority as the fact finder with respect to the second count, which the trial court decided in favor of the defendants. In the third count, the plaintiffs alleged that the odors were the result of the defendants' wilful, reckless and wanton misconduct. At the close of the evidence, the defendants filed a motion for directed verdict as to the third count, which was granted by the trial court. Neither the second nor the third count is the subject of this appeal.

tiffs' use of their property. The jury further found that the defendants' farm operation was the proximate cause of the plaintiffs' loss of enjoyment of their property and that the defendants' use of their property was either unreasonable or unlawful. Lastly, the jury found that § 19a-341 did not apply because the plaintiffs had proven that the offensive odors produced by the defendants' farm were the result of the defendants' negligence in the operation of their farm. After the trial court rendered judgment in accordance with the jury's verdict,[3] this appeal followed.

The defendants raise six claims on appeal. They assert that the trial court improperly: (1) instructed the jury with regard to the unreasonableness element of the private nuisance claim; (2) admitted the testimony of the plaintiff James Pestey regarding the diminution in value of the plaintiffs' property as a result of the nuisance; (3) admitted, under the learned treatise exception to the hearsay rule, a portion of a certain livestock waste management handbook; (4) found the cumulative evidence sufficient to support the jury's finding that the defendants' farm operation was the cause of the offensive odors experienced by the plaintiffs; (5) instructed the jury with regard to the application of § 19a-341; and (6) excluded, based on the best evidence rule, certain expert testimony concerning a second livestock waste management handbook. With respect to the first four claims raised by the defendants, we conclude that they are without merit. With respect to the last two claims, we do not reach their merits because, for the reasons explained hereinafter, we conclude that they were not properly preserved.

[3] Following the jury's verdict, the defendants filed motions to set aside the verdict and for judgment notwithstanding the verdict, to set aside the verdict and for a new trial, and for remittitur, all of which the trial court denied.

## I

We first address the defendants' claim that the trial court improperly instructed the jury with regard to the unreasonableness element of the nuisance claim. Specifically, the defendants argue that the trial court's instruction to the jury was improper because it failed to instruct the jury adequately with respect to the balancing of interests that must be performed in deciding whether a use of property is unreasonable. The defendants contend that, although the trial court correctly instructed the jury to consider a multiplicity of factors in determining whether the defendants' use of their property was unreasonable, the court did not adequately instruct the jury to consider the defendants' legitimate interest in using their property.[4] We conclude that the trial court's instruction to the jury on this issue was proper under the law both as expressed in our prior decisions and as clarified herein.

The standard of review for a challenge to the propriety of a jury instruction is well established. "[J]ury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted.) *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 27, 761 A.2d 1268 (2000).

In order to analyze properly the defendants' claim, we must reexamine and clarify the elements that a plaintiff must prove to prevail on a claim for damages

---

[4] This claim was preserved for appeal by the defendants' submission of a written request to charge.

in a common-law private nuisance cause of action. Specifically, we must clarify two sources of confusion. First, we must distinguish the concept of unreasonable *interference* with the use and enjoyment of property from the concept of an unreasonable *use* of property. Second, we must reaffirm the distinction between private and public nuisance actions.

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." 4 Restatement (Second), Torts § 821D (1979); see also *Herbert* v. *Smyth*, 155 Conn. 78, 81, 230 A.2d 235 (1967). The law of private nuisance springs from the general principle that "[i]t is the duty of every person to make a reasonable use of his own property so as to occasion no unnecessary damage or annoyance to his neighbor." *Nailor* v. *C. W. Blakeslee & Sons, Inc.*, 117 Conn. 241, 245, 167 A. 548 (1933). "The essence of a private nuisance is an interference with the use and enjoyment of land." W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 87, p. 619.

The defendants' claim is based on the principle of private nuisance law that, in determining unreasonableness, "[c]onsideration must be given not only to the interests of the person harmed but also [to] the interests of the actor and to the interests of the community as a whole." 4 Restatement (Second), supra, § 826, comment (c); see also *Walsh* v. *Stonington Water Pollution Control Authority*, 250 Conn. 443, 456–57, 736 A.2d 811 (1999). "Determining unreasonableness is essentially a weighing process, involving a comparative evaluation of conflicting interests . . . ." 4 Restatement (Second), supra, § 826, comment (c); *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 456; *Maykut* v. *Plasko*, 170 Conn. 310, 314, 365 A.2d 1114 (1976); *O'Neill* v. *Carolina Freight Carriers Corp.*, 156 Conn. 613, 617–18, 244 A.2d 372 (1968). Unreasonableness cannot be determined in the abstract, but,

rather, must be judged under the circumstances of the particular case. *Wetstone* v. *Cantor*, 144 Conn. 77, 80, 127 A.2d 70 (1956).

In determining the propriety of the jury instructions regarding the unreasonableness element in this case, we look to our recent decision in *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 443, in which the plaintiff had sought damages in common-law private nuisance for odors and insects emanating from a sewage treatment plant owned by the defendant town. With regard to this element, the trial court in *Walsh* had instructed the jury as follows: "[Y]ou must decide whether the use the town was making of the property was a reasonable use. . . . Now, that's not to suggest that the mere use of the property for a [sewage] treatment plant is reasonable or unreasonable. Clearly, that's a reasonable use of property and the plaintiffs don't claim otherwise." (Internal quotation marks omitted.) Id., 450. The trial court further explained: "If you find that the plant is producing odors—or was or is producing odors or insects, that is the use of the property that you will find that is either reasonable or unreasonable. [The] [p]laintiffs must prove that the use of the property as they have proven the property to . . . have been used was unreasonable . . . ." (Internal quotation marks omitted.) Id. On appeal, this court held that the trial court's charge to the jury was proper because the instructions "conveyed to the jury that it was to take into consideration and weigh the conflicting interests involved." Id., 457; accord *Maykut* v. *Plasko*, supra, 170 Conn. 315 (trial court applied proper test where facts described in findings included consideration of interests of both plaintiff and defendants).

In the present case, the trial court instructed the jury with respect to the unreasonableness element of the nuisance claim in the following manner: "You must also

ask yourselves whether the defendants' use of their property [was] reasonable. A use which is permitted or even required by law and which does not violate local land use restrictions may nonetheless be unreasonable and create a common-law nuisance. You must . . . consider and weigh . . . the location of the defendants' dairy farm, the size of the farm, the manner in which they operate the farm, including their handling and maintenance of the manure, the free stall barn, the milking parlors and the anaerobic manure digester and associated equipment and any other circumstance which you find proven which indicates whether the defendants [were] making a reasonable use of their property." The court stated further: "The question is not whether the plaintiffs or the defendants would regard the condition as unreasonable, but whether reasonable persons generally looking at the whole situation impartially and objectively would consider it [to] be reasonable."

As the charge indicates, the trial court instructed the jury to consider a multiplicity of factors in determining the unreasonableness element. The defendants' argument that the instruction did not adequately instruct the jury to consider the defendants' interests assumes that the factors set forth by the trial court only regard the plaintiffs' interests. Such an assumption is unwarranted. The jury, for instance, was instructed to consider the location of the farm in making its finding regarding reasonableness. The location of the farm as a factor inherently includes the interests of both the plaintiffs and the defendants, and the jury was just as entitled to find that the location of the farm tended to show that the defendants' use was reasonable as it was to find that the location tended to show that the defendants' use was unreasonable. In addition, the trial court explicitly instructed the jury to consider any other circumstances that it found proven that would indicate

"whether the defendants [were] making a reasonable use of their property." This instruction underscored the trial court's previous instruction that the jury was to consider various factors in reaching its decision, including factors relating to the interests of both the plaintiffs and the defendants. Although the trial court did not instruct the jury that the mere use of the property for a dairy farm was clearly a reasonable use if considered in a vacuum, as had the trial court in *Walsh* with respect to the wastewater treatment plant in that case; see *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 450; the trial court's charge nonetheless provided the jury with adequate guidance with which to reach its verdict.

Although the trial court's jury charge was proper under *Walsh* and the decisions upon which *Walsh* relied, a thorough review of the law of nuisance reveals that this area of the law has been prone to confusion, and our case law has been no exception. Our nuisance jurisprudence has become muddled and is in need of clarification. Only after we clarify this area of the law can we determine fully whether the jury charge in this case was proper.

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' " W. Prosser & W. Keeton, supra, § 86, p. 616. This court has stated often that a plaintiff must prove four elements to succeed in a nuisance cause of action: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.) *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 449 n.4, quoting *Filisko* v. *Bridgeport Hydraulic Co.*, 176 Conn.

33, 35–36, 404 A.2d 889 (1978); *State* v. *Tippetts-Abbett-McCarthy-Stratton*, 204 Conn. 177, 183, 527 A.2d 688 (1987); see also *Kostyal* v. *Cass*, 163 Conn. 92, 99–100, 302 A.2d 121 (1972). These elements developed through a long line of cases that can be described best as public nuisance cases.[5] See, e.g., *DeLahunta* v. *Waterbury*, 134 Conn. 630, 631, 59 A.2d 800 (1948) (passengers in automobile brought nuisance action for damages against defendant municipality for injuries sustained when car in which they were riding struck concrete traffic stanchion installed by defendant); *Prifty* v. *Waterbury*, 133 Conn. 654, 655, 54 A.2d 260 (1947) (plaintiffs brought nuisance claim against defendant municipality for injuries sustained by child when ornamental cannon in public park fell); *Hoffman* v. *Bristol*, 113 Conn. 386, 387, 155 A. 499 (1931) (plaintiff brought nuisance claim against defendant municipality seeking to recover for injuries sustained from jumping off diving board in shallow water at pond owned and maintained by defendant).

Despite its grounding in public nuisance law, this four factor analysis has since been applied without distinction to both public and private nuisance causes of action. See, e.g., *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 449 n.4; *Quinnett* v. *Newman*, 213 Conn. 343, 348–49, 568 A.2d 786 (1990); *Marchitto* v. *West Haven*, 150 Conn. 432, 437, 190 A.2d

---

[5] Section 821B of the Restatement (Second) of Torts defines a public nuisance as "an unreasonable interference with a right common to the general public." See *State* v. *Tippetts-Abbett-McCarthy-Stratton*, supra, 204 Conn. 183. Whether an interference is unreasonable in the public nuisance context depends, according to the Restatement (Second), on "(a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . ." 4 Restatement (Second), supra, § 821B. The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake. Id., § 821D, comment (c).

597 (1963). Although there are some similarities between a public and a private nuisance, the two causes of action are distinct. Indeed, Professors Prosser and Keeton in their treatise on the law of torts have stated: "The two have almost nothing in common, except that each causes inconvenience to someone, and it would have been fortunate if they had been called from the beginning by different names." W. Prosser & W. Keeton, supra, § 86, p. 618. Public nuisance law is concerned with the interference with a public right, and cases in this realm typically involve conduct that allegedly interferes with the public health and safety. See, e.g., *Keeney* v. *Old Saybrook*, 237 Conn. 135, 162–63, 676 A.2d 795 (1996) (public nuisance law encompasses conduct detrimental to public health and safety); *Beckwith* v. *Stratford*, 129 Conn. 506, 507, 29 A.2d 775 (1942) (plaintiff brought nuisance action against defendant municipality for injuries sustained in fall allegedly caused by defectively constructed sidewalk).

Private nuisance law, on the other hand, is concerned with conduct that interferes with an individual's private right to the use and enjoyment of his or her land. Showing the existence of a condition detrimental to the public safety, or, as the first two elements of the four factor analysis discussed previously require, showing that the condition complained of had a natural tendency to create a continuing danger, is often irrelevant to a private nuisance claim. In light of the fundamental differences between these two distinct causes of action, we conclude that further attempts to employ the four part test discussed previously herein in the assessment of private nuisance causes of action would be imprudent; private nuisance claims simply do not fit comfortably within the same analytical rubric as public nuisance claims. We must restate, therefore, the elements that a plaintiff

must prove to prevail on a claim for damages in a common-law private nuisance action.[6]

In prescribing these specific elements, we look to the leading authorities in the field of common-law private nuisance for guidance. According to the Restatement (Second) of Torts, a plaintiff must prove that: (1) there was an invasion of the plaintiff's use and enjoyment of his or her property; (2) the defendant's conduct was the proximate cause of the invasion; and (3) the invasion was either intentional and unreasonable, or unintentional and the defendant's conduct was negligent or reckless. 4 Restatement (Second), supra, § 822. Although the language used in this third element does not make the point clearly, under this test, showing unreasonableness is an essential element of a private nuisance cause of action based on negligence or recklessness. See id., § 822, comment (k). Professors Prosser and Keeton define the plaintiff's burden in a similar manner. According to their view, a plaintiff in a private nuisance action must demonstrate that: (1) the defendant acted with the intent of interfering with the plaintiff's use and enjoyment of his or her property; (2) the interference with the use and enjoyment of the land was of the kind intended; (3) the interference was substantial; and (4) the interference was unreasonable. W. Prosser & W. Keeton, supra, § 87, p. 622–25. In the context of a private nuisance, they define a defendant's intent as meaning merely that "the defendant has created or continued the condition causing the interference with full knowledge that the harm to the plaintiff's interests are occurring or are substantially certain to follow." Id., 625.

---

[6] It is beyond the scope of this opinion to determine whether this four factor analysis adequately encompasses the proper inquiry in public nuisance cases. This court's public nuisance decisions, however, indicate that some adjustment is in order. See *Keeney* v. *Old Saybrook*, supra, 237 Conn. 162–63; *State* v. *Tippetts-Abbett-McCarthy-Stratton*, supra, 204 Conn. 183.

This requirement of unreasonableness, a part of the third element in the test set forth in the Restatement (Second) and the fourth element in the test enunciated by Professors Prosser and Keeton, often has been stated, not in terms of whether the *interference* was unreasonable, but, rather, in terms of whether the defendant's *conduct* was unreasonable. See, e.g., *Walsh v. Stonington Water Pollution Control Authority,* supra, 250 Conn. 446 (determining whether defendants' operation of wastewater treatment plant was " 'unreasonable use' "). In its charge to the jury, the trial court in the present case framed the inquiry in such a manner.

Although similar, "[t]he two concepts—unreasonable interference and unreasonable conduct—are not at all identical." W. Prosser & W. Keeton, supra, § 87, p. 623. "Confusion has resulted from the fact that the . . . interference with the plaintiff's use of his property can be unreasonable even when the defendant's conduct is reasonable. . . . Courts have often found the existence of a nuisance on the basis of unreasonable use when what was meant is that the interference was unreasonable, i.e., it was unreasonable for the defendant to act as he did without paying for the harm that was knowingly inflicted on the plaintiff. Thus, an industrial enterprise who properly locates a cement plant or a coal-burning electric generator, who exercises utmost care in the utilization of known scientific techniques for minimizing the harm from the emission of noxious smoke, dust and gas and who is serving society well by engaging in the activity may yet be required to pay for the inevitable harm caused to neighbors." Id., § 88, p. 629. As this example amply demonstrates, while an unreasonable use and an unreasonable interference often coexist, the two concepts are not equivalent, and it is possible to prove that a defendant's use of his property, while reasonable, nonetheless constitutes a common-law private nuisance because it unreasonably interferes with the

use of property by another person. That was the situation in *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 443.

In *Walsh*, this court rejected the defendants' argument on appeal that their operation of the wastewater treatment plant in question could not constitute a nuisance since the operation of such a plant was clearly a reasonable use of property. Id., 457. This court held that the production of odors by the defendants' plant could constitute a nuisance, notwithstanding the fact that operating a wastewater treatment plant was clearly a reasonable use of the property in question. Id. Although the proposition was not stated expressly in *Walsh*, our holding in that case demonstrates that, while the reasonableness of a defendant's conduct is a factor in determining whether an interference is unreasonable, it is *not* an independent element that must be proven in order to prevail in all private nuisance causes of action. The inquiry is cast more appropriately as whether the defendant's conduct unreasonably interfered with the plaintiff's use and enjoyment of his or her land rather than whether the defendant's conduct was itself unreasonable. *Quinnett* v. *Newman*, supra, 213 Conn. 348 (nuisance refers to condition that exists and not to act that creates it). The proper focus of a private nuisance claim for damages, therefore, is whether a defendant's conduct, i.e., his or her use of his or her property, causes an unreasonable interference with the plaintiff's use and enjoyment of his or her property. *Herbert* v. *Smyth*, supra, 155 Conn. 81–82; see also *Scribner* v. *Summers*, 84 F.3d 554, 559 (2d Cir. 1996); *Copart Industries, Inc.* v. *Consolidated Edison Co. of New York, Inc.*, 41 N.Y.2d 564, 570, 362 N.E.2d 968, 394 N.Y.S.2d 169, reconsideration denied, 42 N.Y.2d 1102 (1977).

On the basis of our reexamination of our case law and upon our review of private nuisance law as described by

the leading authorities, we adopt the basic principles of § 822 of the Restatement (Second) of Torts and conclude that in order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the defendant's conduct was the proximate cause of an unreasonable interference with the plaintiff's use and enjoyment of his or her property. The interference may be either intentional; *Quinnett* v. *Newman*, supra, 213 Conn. 348 (nuisance is created intentionally if defendant intends act that brings about condition found to be nuisance); or the result of the defendant's negligence. Id., 348–49. Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiff's use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable.

The determination of whether the interference is unreasonable should be made in light of the fact that some level of interference is inherent in modern society. There are few, if any, places remaining where an individual may rest assured that he will be able to use and enjoy his property free from all interference. Accordingly, the interference must be substantial to be unreasonable.

See 4 Restatement (Second), supra, § 822, comment (g); W. Prosser & W. Keeton, supra, § 88, p. 626.

Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated. See *Walsh* v. *Stonington Water Pollution Control Authority*, supra, 250 Conn. 458–59; see also 4 Restatement (Second), supra, § 822, comment (g), and § 826, comment (e); W. Prosser & W. Keeton, supra, § 88, p. 629. With these standards in mind, we turn to the present case.

In reaching its verdict, the jury completed a set of interrogatories provided by the trial court. Each interrogatory asked the jury whether the plaintiffs had proven a specific element of the private nuisance claim, and the jury answered each interrogatory affirmatively. The first interrogatory asked: "Did the plaintiffs prove [that] the defendants' dairy farm produced odors which unreasonably interfered with [the] plaintiffs' enjoyment of their property?" This interrogatory correctly captured the crux of a common-law private nuisance cause of action for damages, i.e., whether the defendants' conduct unreasonably interfered with the plaintiffs' use and enjoyment of their property. It correctly stated that the focus in such a cause of action is on the reasonableness of the interference and not on the use that is causing the interference. In light of this conclusion, the fourth interrogatory, which involved the unreasonable use element that is at issue in this case, was superfluous. The fourth interrogatory asked: "Did the plaintiffs prove the defendants' use of their property is either unreasonable or unlawful?" As our previous discussion herein demonstrates, a plaintiff seeking damages in a common-law private nuisance cause of action is not required to prove that the defendant's conduct was unreasonable. Rather, the plaintiff must show that the interference with his or her property was unreasonable. The fourth

interrogatory, therefore, in effect, required the plaintiffs to prove an additional, nonessential element to prevail on their claim. We conclude that the jury interrogatories and the jury charge, considered together, properly informed the jury of the necessary elements of a common-law private nuisance cause of action for damages and provided the jury with adequate guidance with which to reach its verdict. Accordingly, the trial court's jury charge was proper under the law as clarified herein.

## II

We next address the defendants' claim that the trial court improperly admitted into evidence the testimony of James Pestey regarding the diminution in value of his property. Specifically, the defendants claim that, although it was proper for the trial court to allow James Pestey to give his opinion as to the value of his property both before and after the defendants began their farm operation, it was improper to allow him to testify that, in his opinion, the offensive odors created by the defendants' farm were the cause of the property's diminution in value. We disagree.

At trial, James Pestey testified that, in his opinion, the value of his property had been $585,000 in 1990, before the defendants began their farm operation, but was only $330,000 at the time of trial, in 1999. He testified further that the diminution in value of his property was, in his opinion, the result of the offensive odors emanating from the defendants' farm.

In deciding this issue, we are guided by our decision in *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 634 A.2d 870 (1993). In *Tessmann*, the plaintiffs brought an action alleging that the defendants' substandard construction of the plaintiffs' house diminished its value. After the trial court excluded the testimony and report of the plaintiffs' only expert witness on the issue of the diminution in value, the plaintiffs testified

themselves as to their opinion regarding the value of their house as it was, compared to what it would have been worth had the defendants properly constructed it. Id., 46. In determining whether it was proper for the trial court to allow such testimony, this court reiterated the long established rule that "[i]t is undisputed that homeowners are qualified to testify as to their personal opinion regarding the value, or diminution in value, of their properties." Id., 47; see *McCahill* v. *Town & Country Associates, Ltd.*, 185 Conn. 37, 41, 440 A.2d 801 (1981). This rule "reflects . . . the common experience that an owner is familiar with her property and knows what it is worth." (Internal quotation marks omitted.) *State* v. *Simino*, 200 Conn. 113, 120, 509 A.2d 1039 (1986).

The plaintiffs in *Tessmann* were allowed to testify as to the value of their property as it then existed, compared to what its value would have been *if the defendants had properly constructed the house. Tessmann* v. *Tiger Lee Construction Co.*, supra, 228 Conn. 46. Implicit in the plaintiffs' testimony in *Tessmann* was the fact that the defendants' substandard construction of the plaintiffs' house was the cause of its decreased value. In the present case, James Pestey was allowed to testify as to his opinion of the value of his property both before and after offensive odors began emanating from the defendants' farm. After testifying that the value of his property had diminished since the odors began, he made explicit the causal connection implied by his testimony by testifying further that, in his opinion, the offensive odors were the cause of his property's diminished value. We conclude that under *Tessmann* it was proper for the trial court in the present case to allow James Pestey to testify in this manner regarding the cause of the diminution in the value of his property.

## III

Next, the defendants claim that the trial court improperly admitted into evidence, under the learned treatise exception to the hearsay rule, a section of a certain livestock waste management handbook published by the Midwest Planning Service. The defendants argue specifically that the trial court improperly admitted into evidence a section of the handbook titled "Control of Odors and Gases Leaving the Livestock Area," which provided, among other things, that a farm operation should be located at least one-half mile away from neighboring houses, without the handbook first having been qualified as a learned treatise on the issue of odor control.

Preliminarily, we address the plaintiffs' contention that the defendants have failed to preserve properly this claim for appeal. The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. "This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 427–28, 735 A.2d 778 (1999); Practice Book § 5-5.[7] The defendants in this case have properly preserved this issue for appeal.

---

[7] Practice Book § 5-5 provides in relevant part: "Whenever an objection to the admission of evidence is made, counsel shall state the grounds upon which it is claimed or upon which objection is made, succinctly and in such form as he or she desires it to go upon the record, before any discussion or argument is had. . . ."

When the plaintiffs' counsel initially attempted to introduce the section of the Midwest Planning Service handbook (Midwest handbook) at issue, the defendants' counsel objected on the ground that it had not been qualified as a learned treatise. The trial court sustained the objection, ruling that the appropriate foundation had not been established in order to qualify the Midwest handbook as a treatise on this particular question.[8] After further interrogation, the plaintiffs' counsel again sought to have the text from the Midwest handbook admitted. Before deciding whether to admit the evidence, the trial court asked the defendants' counsel for his position on the issue, and the defendants' counsel reiterated his belief that the Midwest handbook had not been established as a learned treatise. The court disagreed with the defendants' counsel and allowed the section of the Midwest handbook at issue to be read into evidence.[9] Although the defendants' counsel did

---

[8] The following exchange between counsel and the court occurred:

"[Plaintiffs' Counsel]: All right. Doctor, would you read me what the recommendations are for control of odors and gasses leaving the livestock area according to the Midwest Planning Service?

"[Defendants' Counsel]: Your Honor, I don't believe that, and perhaps I missed it, the court has determined that this is a treatise—

"The Court: Well, the witness has testified that this particular—on a question from [the plaintiffs' counsel] that the [Midwest handbook] is a standard reference work.

"Now, it is a standard reference work that was qualified as such as to how much manure to figure on depending on the size of the cow. In that area, it's been qualified by this witness as a standardized reference work, and so that in that regard, I would permit the witness to testify on this topic is not within the ken of what the witness said. He acknowledged it as a standard reference work [on this issue only] so the objection's sustained."

[9] The following exchange occurred prior to the court's ruling on the evidence:

"[Plaintiffs' Counsel]: Your Honor, I think he's now put it back in play. . . .

"[Defendants' Counsel]: Your Honor, he indicated that was the place that you could find information, and he never asked whether it was considered a standard reference work.

"The Court: I think [the plaintiffs' counsel] did say it's a general reference. I think he did. I think he said it's general reference. I think he has expanded it into—I'll permit it, counsel."

not use the term "objection" at either time that the plaintiffs' counsel sought to introduce the handbook into evidence, a review of the transcript reveals that the trial court understood the defendants' counsel to be making an objection each time. As a result, it is clear that the trial court effectively was alerted to a claim of potential error while there was still time for the court to act. See *State* v. *Bush,* supra, 249 Conn. 428; *State* v. *Jones,* 193 Conn. 70, 88, 475 A.2d 1087 (1984). The defendants, therefore, have properly preserved this claim for appeal. We therefore turn to the merits of the issue.

Under the rules of evidence in this state, text from a published work "on a subject of history, medicine, or other science or art" may be admitted into evidence under the learned treatise exception to the hearsay rule if two foundational requirements are satisfied. Conn. Code Evid. § 8-3 (8).[10] First, the work must be "recognized as a standard authority in the field by the witness, other expert witness or judicial notice," and, second, the work must either be brought to the attention of the witness on cross-examination or have been relied on by that expert during direct examination. Id.; see also *Cross* v. *Huttenlocher,* 185 Conn. 390, 395, 440 A.2d 952 (1981); C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.23, pp. 654–56.

In the present case, the plaintiffs twice sought to introduce the section of the Midwest handbook at issue during the cross-examination of Richard Vetter, the designer of the anaerobic digestion system on the defen-

---

[10] Connecticut Code of Evidence § 8-3 (8) provides that the following evidence is not excluded by the hearsay rule: "To the extent called to the attention of an expert witness on cross-examination or relied on by the expert witness in direct examination, a statement contained in a published treatise, periodical or pamphlet on a subject of history, medicine, or other science or art, recognized as a standard authority in the field by the witness, other expert witness or judicial notice."

dants' farm. The defendants' counsel objected to the initial attempt on the ground that the Midwest handbook had not been qualified as a learned treatise. The trial court agreed and sustained the objection, ruling that the Midwest handbook had been established as a learned treatise only on the issue of livestock manure production. Subsequently, the plaintiffs' counsel attempted to establish the appropriate foundation so as to qualify the Midwest handbook as a learned treatise on the issue of odor control. The plaintiffs' counsel asked Vetter whether the Midwest handbook was recognized as a standard reference work by people in Vetter's profession with respect to animal waste characteristics. Vetter responded affirmatively and stated that it contained general references and recommendations. The plaintiffs' counsel next asked whether the Midwest handbook also was used as a reference with respect to controlling the spread of odors and gases from livestock areas, and Vetter again responded that it contained general recommendations.[11] At that point, the plaintiffs' counsel asked the trial court to allow the section of the Midwest handbook at issue to be read into evidence by Vetter. The trial court ruled that Vetter had recognized the Midwest handbook as a general reference on this topic and allowed the testimony over the objection of the defendants' counsel.

It is well settled that the trial court's evidentiary rulings are entitled to great deference. *Daley* v. *Aetna*

---

[11] The following colloquy between the plaintiffs' counsel and Vetter occurred:

"[Q]. Doctor, this [handbook] is also recognized as a standard and referred to by people in your profession and accepted with respect to animal waste characteristics; isn't that correct?

"[A]. This is general references, general recommendations, yes.

"[Q]. Okay. And it's recommended also for people who want to find information with respect to gas control and control of odors and gasses leaving the livestock area; isn't that true?

"[A]. Again, general recommendations."

*Life & Casualty Co.*, 249 Conn. 766, 789, 734 A.2d 112 (1999). The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. Id.; *State* v. *Berger*, 249 Conn. 218, 229–30, 733 A.2d 156 (1999). We conclude that Vetter's testimony, although not an unequivocal endorsement of the Midwest handbook as a leading authority in the field, was nonetheless sufficient to establish the necessary foundation to qualify it as a learned treatise. In response to questions posed by the plaintiffs' counsel, Vetter acknowledged that the Midwest handbook was a standard reference in his profession in which one could find general references and recommendations with respect to animal waste characteristics and controlling the spread of odors and gases from livestock areas. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the introduction of the section of the Midwest handbook at issue.

## IV

The defendants next claim that the evidence introduced at trial was not sufficient to support the jury's finding that the defendants' farm operation was the source of the offensive odors at the plaintiffs' property. The standard of review for such a claim is well established. A party challenging the validity of the jury's verdict on grounds that there was insufficient evidence to support such a result carries a difficult burden. "In reviewing the soundness of a jury's verdict, we construe the evidence in the light most favorable to sustaining the verdict." *Donner* v. *Kearse*, 234 Conn. 660, 681, 662 A.2d 1269 (1995). We do not ask whether we would have reached the same result. "[R]ather, we must determine . . . whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict . . . ." *State* v. *Ford*, 230 Conn. 686, 693, 646

A.2d 147 (1994). "If the jury could reasonably have reached its conclusion, the verdict must stand." *Donner* v. *Kearse,* supra, 681–82.

We conclude that there was sufficient evidence to support the jury's finding that the defendants' farm operation was the source of the offensive odors at the plaintiffs' property. Several witnesses testified that the defendants' farm was the source of the odors that affected the plaintiffs' property, and the plaintiffs themselves both testified that the defendants' farm was the source of the odors affecting their property. This testimony was based in part on the fact that the odors were present whenever the wind blew from a northerly direction, the direction of the defendants' farm, toward the plaintiffs' property. The plaintiffs each also testified that they were aware of other sources of odor in North Franklin but that none of those sources generated the type of odors that were affecting their property. The plaintiffs' testimony was corroborated by the testimony of their four sons, each of whom testified that the defendants' farm generated the offensive odors. Three of the four sons also testified that they were familiar with other odor producing establishments in North Franklin and that none of those establishments was the source of the odors present on the plaintiffs' property.

The plaintiffs also introduced the testimony of two experts, Lawson Safley, a livestock waste management expert, and Richard Duffee, an odor expert. Safley testified about the anaerobic digestion system at the defendants' farm based on his inspection of the site and his review of documents regarding the design and operation of the digester. He testified that, in his opinion, the digester was a probable source of the odors at the plaintiffs' property. First, Safley testified that the gaseous mixture produced by the digester was not being utilized to power the digester's engine generators. Rather, these odorous gases were simply being vented

into the air. Second, Safley opined that the digester was either undersized or overloaded, which resulted in the incomplete digestion of manure. The release of this incompletely digested manure from the system resulted in the generation of an odor unlike that typically found on farms.

Duffee testified that he smelled objectionable odors while on the plaintiffs' property. He testified that the odors were present only in the vicinity of the defendants' farm and downwind therefrom, which led him to believe that the defendants' farm, specifically the manure pit and the anaerobic digester, was the source of the odors. He testified further that he traced the odors he experienced at the plaintiffs' property to the defendants' farm. Furthermore, in addition to the testimony of the plaintiffs, their four sons, and the expert testimony of Safley and Duffee, the plaintiffs offered the testimony of several other witnesses who had observed objectionable and offensive odors in the vicinity of the defendants' farm.

Although not free from contest, the evidence introduced at trial was sufficient to support the jury's finding that the defendants' farm was the proximate cause of the odors that interfered with the plaintiffs' use and enjoyment of their property. Whether we would have reached a contrary conclusion had we been seated as the jury is not relevant to our determination in this case.[12] Our inquiry is limited to whether the jury reasonably could have reached its finding based on the evi-

---

[12] In its memorandum of decision on the second count of the amended complaint seeking equitable relief, the trial court's factual findings were in contrast with the jury's findings on the nuisance count. Although the trial court was "unwilling to infer that the odors claimed by the plaintiffs and their witnesses emanated from the defendants' farm," the court stated correctly that "[t]here was [however] sufficient evidence for the jury to decide that odors did emanate from the defendants' operation and constitute[d] an unreasonable interference with the plaintiffs' use and enjoyment of their property."

dence before it, including any inferences reasonably drawn therefrom. We conclude, on the basis of our review of the evidence introduced at trial, that the jury's finding was reasonably supported by the evidence at trial.

## V

Lastly, we address the claims the defendants raise on appeal that were not properly preserved at trial. The first issue involves the trial court's instruction with respect to § 19a-341, the statute concerning the right to farm, and the second issue involves the trial court's exclusion of testimony, based on the best evidence rule, with regard to a certain livestock waste management handbook published by the Northeast Regional Agricultural Engineering Service, which contradicted the Midwest handbook that was admitted into evidence. These issues were not properly preserved at trial, and, accordingly, we do not reach their merits.

First, the defendants claim that the trial court's instruction to the jury regarding the application of § 19a-341 was improper because it permitted the jury to avoid application of the statute based on the defendants' negligence in the location of their farm rather than in its operation. Specifically, the defendants contend that the trial court improperly structured the jury charge by first instructing the jury on the elements of § 19a-341 and thereafter instructing the jury that the statute would not apply if the plaintiffs had proven any of the allegations of negligence contained in the their complaint, one of which claimed negligence in the location of the defendants' farm.

A party may preserve for appeal a claim that a jury instruction was improper either by submitting a written request to charge or by taking an exception to the

charge as given. Practice Book § 16-20.[13] If counsel follows the latter course, he or she must "state distinctly the matter objected to and the ground of objection." Id. "The purpose of the rule is to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *State* v. *Miller*, 186 Conn. 654, 658, 443 A.2d 906 (1982). The defendants in this case neither submitted a written request to charge nor excepted to the charge as given to the jury on the issue of negligent location as opposed to negligent operation. Instead, as the defendants' conceded at oral argument, this issue was raised for the first time on appeal. We will not reach the merits of an issue under such circumstances, in the absence of plain error. Practice Book § 60-5.[14] Moreover, we will not review an underlying claim for plain error unless the request for relief under that doctrine has been adequately briefed. *HLO Land Ownership Associates Ltd. Partnership* v. *Hartford*, 248 Conn. 350, 361, 727 A.2d 1260 (1999). The defendants in this case have failed to engage in any analysis to demonstrate that plain error has occurred under the circumstances of this case. Rather, they merely assert in their brief that the instruction constituted plain error. The defendants, therefore, have failed to brief this issue adequately. Accordingly, we decline to reach the merits of the defendants' claim.

[13] Practice Book § 16-20 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. The exception shall be taken out of the hearing of the jury."

[14] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

Second, the defendants claim that the trial court improperly excluded, based on the best evidence rule, the testimony of Dwaine Bundy, the defendants' odor expert, regarding the fact that the livestock waste management handbook published by the Northeast Regional Agricultural Engineering Service did not contain any reference to the proper distance a farm should be located from surrounding neighbors, as did the Midwest handbook that was admitted into evidence. During direct examination, the trial court allowed Bundy to testify, over the plaintiffs' objection on best evidence grounds, that the Northeast Regional Agricultural Engineering Service handbook did not contain any recommendation regarding a minimum distance from neighboring houses that a farm operation should be located. Subsequently, during the plaintiffs' cross-examination of Bundy, the trial court, sua sponte, reversed its earlier ruling and ordered that Bundy's testimony on this issue be stricken from the record. The defendants did not object. Because the defendants' counsel never raised this issue in the trial court and does not claim plain error, we decline to entertain this claim on appeal. Practice Book § 60-5; *State* v. *Cator*, 256 Conn. 785, 801 and n.13, 781 A.2d 285 (2001).

The judgment is affirmed.

In this opinion the other justices concurred.