# STATE OF CONNECTICUT *v.* ROBERT HORROCKS
## (AC 17653)

O'Connell, C. J., and Mihalakos and Daly, Js.

Argued September 27, 1999—officially released March 21, 2000

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *Elpedio Vitale*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Robert Horrocks, appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), burglary in the first degree in violation of General Statutes § 53a-101 (a) (2), kidnapping in the second degree in violation of General Statutes § 53a-94 and larceny in the third degree in violation of General Statutes § 53a-124 (a) (1).

The dispositive issue is whether the defendant's rights to confrontation and to present a defense, and his rights under General Statutes § 54-86f,[1] were impermissibly impaired when the court excluded evidence of the victim's alleged consensual sexual relations with the detective investigating her claim of rape. We reverse the judgment of the trial court and remand the case for a new trial.[2]

---

[1] General Statutes § 54-86f, also known as the rape shield statute, provides in relevant part: "In any prosecution for sexual assault under [section] 53a-70 . . . no evidence of the sexual conduct of the victim may be admissible unless such evidence is (1) offered by the defendant on the issue of whether the defendant was, with respect to the victim, the source of semen, disease, pregnancy or injury, or (2) offered by the defendant on the issue of credibility of the victim, provided the victim has testified on direct examination as to his or her sexual conduct, or (3) any evidence of sexual conduct with the defendant offered by the defendant on the issue of consent by the victim, when consent is raised as a defense by the defendant, or (4) otherwise so relevant and material to a critical issue in the case that excluding it would violate the defendant's constitutional rights. . . ."

[2] The defendant raises two additional claims on appeal, namely, that the court improperly (1) refused to give a missing witness charge to the jury in accordance with *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), in connection with the state's failure to call Detective Vincent Raucci of the New Haven police department as a witness and (2) instructed the jury as to reasonable doubt. In regard to the first claim, our Supreme Court has abandoned the *Secondino*, or missing witness, rule in criminal cases and, thus, this claim has no merit. See *State* v. *Malave*, 250 Conn. 722, 738, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). As to the second claim, we decline

The following facts are relevant to this appeal. The state presented evidence that the victim was a fifty-two year old woman residing in New Haven. The victim entered her apartment on the afternoon of October 4, 1995. She noticed that her curtains in her bedroom were askew and, upon returning to the kitchen, was attacked by the defendant, who was wearing a mask and was carrying a club. The defendant struck her hard on the head and kept beating her "like an animal."[3] After the attack, the defendant sexually assaulted the victim and thereafter tied her to a kitchen chair. The defendant then took the victim's car keys and drove her car away. The victim was able to untie herself, and telephoned a battered women's shelter and then the police. At that time, she did not report to the police that she had been assaulted, but only that her car had been stolen. After the police arrived at her home to investigate her complaint, the victim whispered to Thomas Benedetto, an officer with the New Haven police department, that she had been raped.

The defendant testified that he had consensual sex with the victim. He further testified that he initially had permission to take the victim's car but that she later rescinded it. Additional facts will be discussed when necessary.

The defendant claims that his rights to confrontation and to present a defense, and his rights under § 54-86f were impermissibly impaired when the court excluded evidence of the victim's consensual sexual relations with the detective investigating her claim of rape. We agree.

The following facts are relevant to this claim. Shortly after the claimed incident, Vincent Raucci, a detective

to address it because this issue was not adequately briefed by the defendant, and because we reverse the judgment and remand this case for a new trial. See *Carano* v. *Moomey*, 51 Conn. App. 382, 387, 721 A.2d 1240 (1998).

[3] The victim testified that she had seen the defendant on an earlier occasion in the backyard of her home.

with the New Haven police, interviewed the victim just before she was taken to a hospital for a physical examination. The victim had disclosed to the prosecutor that she had sex with Raucci a couple of weeks after the claimed sexual assault. This information was provided to the defense by the state when the state filed with the court a submission under seal seeking an in camera determination as to when the information had to be disclosed to the defendant or if it need not be disclosed pursuant to § 54-86f. In addition to the information provided by the state's submission, the defense was told by the victim's upstairs neighbor, Lisa Williams, that the victim had told her that she had "wild sex" with Raucci on the night of the alleged sexual assault. On April 22, 1997, an in camera proceeding was conducted in chambers.[4]

---

[4] The discussion in chambers in relevant part was as follows:

"The Court: All right. We're conducting an in camera proceeding in this matter with only counsel and the court reporter and the court present in the room, and the factual situation that we're in at this point [is] that despite the court issuing the capias to have Lisa Williams brought to court, the sheriff has reported that when he went to her residence, he was unable to locate her and, therefore, she is not here at the courthouse for [defense counsel] to be able to make an offer of proof through her testimony.

"And after discussing [the matter] with both counsel, the court and counsel have decided to proceed with an offer of proof by [defense counsel] setting forth what he in good faith believes Lisa Williams would say if she came here and were testifying by way of an offer of proof. [The prosecutor] has certain factual assertions he wishes to make with reference to Lisa Williams and her credibility. Go ahead, Mr. Carlow.

"[Defense Attorney Brian Carlow]: On April 5th of 1997, my investigator, Donna Harris, and Thomas Nichol, who's assisting me in this case, spoke with Lisa Williams. At that time, Lisa Williams indicated to them that the morning after this incident, sometime between, I believe, 11 and 12 o'clock, the complainant in this case went up to the second floor apartment where Lisa Williams was and where she lives, and indicated to her, indicated to Lisa Williams, that the previous night, being the night of October 4th, October 5th, the complainant had engaged in, as she put it, quote, 'wild sex,' end quote, with Detective Vinnie Raucci of the New Haven police department.

"Vinnie Raucci was, at that time, the lead detective in this case, having taken statements from both Miss Williams and [the victim]. Miss Williams also indicated that she had seen Detective Raucci's gray, unmarked police car, or at least what she believed was a gray, unmarked police car, in the

During the trial, the defense wanted to cross-examine the victim concerning her relationship with Raucci and to ask her whether she had sex with him on the same

parking lot behind State Street when she went to bed that night and [that] it was there in the morning. She indicated that [the victim], in addition to indicating that she had sexual relations with Detective Raucci, apologized to her for any noise she might have made, and Lisa Williams further indicated that [the victim] appeared neither upset [nor] crying [and that] she didn't appear in any way other than how she would normally see her. On April—

"The Court: Excuse me, Mr. Carlow, when was it that Lisa Williams told your investigator that?

"[Defense Counsel]: April 5th.

"The Court: This year?

"[Defense Counsel]: Of '97.

"The Court: Go ahead.

"[Defense Counsel]: On April 20th of 1997, which is this past Sunday, I went to Lisa Williams' house and spoke with her for probably about forty minutes. During that time, she told me precisely what she had told Donna Harris and attorney Nichol back on April 5th, that is that at about 12 o'clock the complainant came up to her apartment, indicated to her that she had wild sex, or maybe she didn't use the word wild. I think she said she had sex with Detective Vinnie Raucci the night before, that she did not appear upset, distraught, was not crying [and that the victim] apologized to her for any disturbance there might have been.

"My understanding is, although obviously [I was] not a party to this, is that the state interviewed Lisa Williams on Thursday or Friday of last week, which would have been, I guess, the 17th or the 18th of April of 1997, and [that she] indicated [to the state] similar events that she conveyed to us. I would also note when I spoke with her on Sunday, the 20th, she also indicated that she had seen this gray, what she believed to be an unmarked police car, behind the house for the entire evening, or that she saw it when she went to bed and it was there in the morning, assuming it was there for the entire evening.

"With respect to the content of what she told the state, obviously I wasn't privy to that, but my understanding is that there may be some aspect concerning the car that might not be exactly the same. But in terms of principally, that the complainant had told Lisa Williams on October 5th that she had sex the night before with Detective Raucci, that was conveyed to the state.

"This is all in the context of . . . I believe the date of the motion was the 14th of April—

"The Court: Wait a minute. Before you get into argument—

"[Defense Counsel]: No, no, this is a factual predicate as well.

"The Court: I'm sorry. Go ahead.

"[Defense Counsel]: That on the motion that the state submitted to the court under seal in April, I think it's the 14th of '97, contained within that motion, which is part of the record, there is an indication by the state that

night of the alleged assault. The defense argued that the examination was necessary to impeach the victim's credibility as to when she started having sex with Raucci, and also that such behavior could dispute a claim of sexual assault that allegedly occurred a few hours earlier. The defense also argued that the exception contained in § 54-86f (4) was applicable.[5] The court rejected this argument and did not permit the defense to cross-examine the victim on that basis.

The state contends that the cross-examination of the victim concerning her relationship with Raucci was not relevant and that its exclusion did not violate the defendant's right to confrontation and a fair trial. The state also contends that this claim is not preserved for review. We disagree.

the complainant in this case acknowledged or told the state that she indeed had sexual relations, albeit consensual, with Detective Raucci.

"I think the quote was, a couple of weeks after the incident, and that there was one subsequent incident of consensual sex between the two of them. So that's the complainant's report to the state, which was after filing an in camera motion to the court, which was disclosed to me.

"My intention is, if allowed to confront the complainant, who is under subpoena—she was subpoenaed for yesterday [and] is under subpoena and available today—to confront her with questions concerning, first, sexual activity with Detective Raucci on the night of October 4th, morning of October 5th. Second, with respect to consensual sexual activity she had with Detective Raucci when she indicated to the state that she indeed had that, which I guess would be a couple of weeks after the incident and then sometime shortly thereafter.

"So, this offer of proof is in an effort to comply with the rape shield statute, [General Statutes §] 54-86f, and specifically with respect to [subdivision] (4)."

After hearing the offer or proof by defense counsel, the court stated: "The rape shield law, § 54-86f, and the cases interpreting it, make it clear that . . . that evidence of this type is not admissible unless the probative value of the evidence outweighs its prejudicial effect on the victim. The court is of the opinion that the probative value of the evidence [defense counsel] wishes to attempt to offer is slight and the prejudicial effect on the victim is great, and in the opinion of the court, the prejudicial effect on the victim clearly outweighs the probative value of the evidence and, therefore, the court denies the motion by the defense to admit this evidence."

[5] See footnote 1.

The defendant made an offer of proof to support the evidence to which the state objected. We conclude, therefore, that the defendant properly preserved the confrontation issue for appellate review. Equally unavailing are the state's further claims that the defendant's arguments were bereft of any assertion that his offer of proof went to bias.

"It is always relevant to the issue of bias that a witness may have a relationship to the prosecuting authorities in a criminal case. To preclude exploration of such a relationship unduly restricts the defendant's right to cross-examination. . . . [T]he weight to be accorded such evidence was a matter for the jury." *State* v. *Santiago*, 224 Conn. 325, 332, 618 A.2d 32 (1992).

"The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . Cross-examination to elicit facts tending to show motive, interest, bias and prejudice is a matter of right and may not be unduly restricted. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Arline*, 223 Conn. 52, 60, 612 A.2d 755 (1992); see also *Davis* v. *Alaska*, 415 U.S. 308, 318, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); *State* v. *Lubesky*, 195 Conn. 475, 481–82, 488 A.2d 1239 (1985).

"In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was adequately covered by other questions that were allowed, and the overall quality of the cross-

examination viewed in relation to the issues actually litigated at trial." *State* v. *Roma*, 199 Conn. 110, 116, 505 A.2d 717 (1986). Although it is axiomatic that the scope of cross-examination generally rests within the discretion of the court, "[t]he denial of all meaningful cross-examination into a legitimate area of inquiry fails to comport with constitutional standards under the confrontation clause." Id.; see also *State* v. *Oehman*, 212 Conn. 325, 330–31, 562 A.2d 493 (1989); *State* v. *James*, 211 Conn. 555, 573, 560 A.2d 426 (1989).

Our review of the record convinces us that the preclusion of any cross-examination of the victim concerning her relationship with Raucci improperly prohibited inquiry into a legitimate area of relevant concern.

We must next determine whether the court's limitation of the defendant's cross-examination of the victim was harmless beyond a reasonable doubt. There are several factors that the court considers in the determination of such an inquiry. The most important factor is an examination of the impact such evidence would have on the trier of fact and the result of the trial. See *State* v. *Ortiz*, 198 Conn. 220, 225, 502 A.2d 400 (1985). In this case, the nature of the excluded inquiry was central to whether the victim had consented to sexual relations and whether she had been sexually assaulted. These issues were at the core of the defendant's defense and, if believed by the trier of fact, could have affected the result of the trial. The testimony, therefore, should not have been excluded from consideration by the trier of fact. "The confrontation clause of the sixth amendment requires that the defendant be accorded some irreducible minimum of cross-examination into matters affecting the reliability and credibility of the [witness]." Id., 224. Under this standard and on the basis of our review of the entire record, we conclude that limiting the cross-examination of the victim was not harmless beyond a reasonable doubt.

We next consider the defendant's claim that his rights under § 54-86f were violated because, although the statute specifically bars inquiry into a victim's sexual conduct, he should have been able to present such evidence to prove his defense of consent.

Presumptively, § 54-86f excludes evidence of the sexual conduct of a victim for sound policy reasons. When a defense of consent, however, is made, the court must balance the prejudicial effect of evidence of the victim's sexual conduct against the right of the defendant to defend himself. Here, the defendant wanted to cross-examine the victim to prove his defense of consent. The proffered evidence of sexual activity should be admissible if it is introduced to support the defendant's claim of consent.

"[Our Supreme Court] has previously enumerated situations in which the potential prejudicial effect of relevant evidence would counsel its exclusion. Evidence should be excluded as unduly prejudicial: (1) where it may unnecessarily arouse the jury's emotions, hostility or sympathy; (2) where it may create distracting side issues; (3) where the evidence and counterproof will consume an inordinate amount of time; and (4) where one party is unfairly surprised and unprepared to meet it. *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). The proffered testimony does not pose any of these dangers." *State* v. *Rinaldi*, 220 Conn. 345, 356, 599 A.2d 1 (1991).

Similarly, the proffered testimony in this case did not pose any of the dangers listed. It was, in fact, relevant to the substantive issue of consent raised by the defendant and would not have impugned the victim's character by introducing lurid details. Finally, the court could have given a charge to the jury to the effect that the evidence adduced from the victim's testimony was not to be considered as an indication of immoral conduct

on her part, but rather for the sole purpose of determining her credibility by considering alleged inconsistent behavior following a traumatic sexual assault.

Because the exclusion of the testimony was likely to have affected the jury's verdict, we agree that the defendant's rights to confrontation and to present a defense, and his rights pursuant to § 54-86f, were impermissibly impaired when the court excluded evidence of the victim's consensual sexual relations with the detective investigating her claim of rape. We, therefore, reverse the judgment.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.