## STATE OF CONNECTICUT *v.* FRANCIS D.[1]
## (AC 21599)

Foti, Schaller and Peters, Js.

---

[1] In keeping with our policy to protect the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom her identity may be revealed. See General Statutes § 54-86e.

1

Argued September 19, 2002—officially released February 11, 2003

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, special deputy assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (2).[2] On appeal, the defendant claims that the trial court improperly (1) permitted a constancy of accusation witness to provide expert

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

testimony, (2) admitted into evidence the victim's written statement that she had given to the police and (3) refused to allow the defendant to make requested offers of proof during cross-examination of two witnesses. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On Saturday, July 17, 1999, the victim, who was then twelve years old, was visiting with her grandparents at their home. During the evening hours, the victim and her cousin, who also was visiting, began watching television in the bedroom of the defendant, who is the victim's uncle. At that time, the defendant was thirty-nine years of age and lived in the victim's grandparents' home. Sometime thereafter, the victim's cousin left the bedroom and went downstairs. Between the hours of 10 and 11 p.m., the defendant entered his bedroom and discovered the victim lying in his bed and watching television. The defendant lay down beside the victim and fell asleep The victim continued watching television, falling asleep sometime thereafter.

Between the hours of 11 p.m. and 1 a.m., the victim awoke to find the defendant touching her breasts. As the defendant was doing that, he moved closer to the victim and began digitally penetrating her vagina. The victim unsuccessfully attempted to push the defendant away. When the defendant eventually stopped, the victim moved away from him, remained in bed and fell back to sleep.

When the victim awoke the next morning, she felt the defendant fondling and digitally penetrating her vagina. The victim pushed the defendant away and ran from the bedroom. The victim did not immediately report either incident to her mother or to the grandparents on Sunday, July 18, 1999. The victim reported the incidents to her mother on Monday, July 19, 1999.

Following the victim's disclosure, the mother took the victim to a hospital for an examination. At the hospital, the victim was met by Detective Thaddeus Walewski, Officer Donald Schuler and a social worker at the hospital's emergency department. A physical examination of the victim revealed that she had suffered a superficial bruise on one breast. There was, however, no sign of vaginal trauma. Tests performed as part of a sex crimes kit protocol were inconclusive for sexual assault.

Two days after first reporting the incident, the victim signed a written statement for the police in which she recounted the attacks of Saturday night, July 17, and Sunday morning, July 18, 1999. On September 16, 1999, the state filed a five count substitute information charging the defendant with two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and two counts of risk of injury to a child in violation of § 53-21 (2).

The defendant was tried before a jury. On November 13, 2000, the jury found the defendant guilty on both counts of risk of injury to a child and acquitted him of the sexual assault counts. On December 15, 2000, the court imposed a total effective sentence of ten years incarceration, execution suspended after six years, and ten years of probation. The defendant now appeals. Additional facts will be set forth where necessary to the resolution of the appeal.

I

We first consider the defendant's claim that the court improperly permitted a constancy of accusation witness to provide expert testimony. Specifically, the defendant argues that (1) because the social worker was offered solely as a constancy of accusation witness, and was

not recognized or qualified as an expert witness, her testimony regarding the theory of delayed disclosure was inadmissible under the constancy of accusation doctrine, and (2) even if the social worker was qualified properly as an expert witness, her testimony was improper because it invaded the fact-finding province of the jury.

We first set forth our standard of review. "[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . An appellate court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings." (Citation omitted; internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 107, 121, 806 A.2d 51 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

The following additional facts are necessary to the proper resolution of the defendant's claim. In the defendant's November 10, 1999 motion for disclosure and examination, he requested the "[i]dentification of any and all *experts* whom the State intend[ed] to call as witnesses at trial, including name, business, address, and subject area of the *expert's* proposed testimony." (Emphasis added.) On November 2, 2000, the state filed its disclosure response, enclosing a copy of the victim's medical records and informing the defendant that results of the rape test kit were forthcoming. The state also provided its witness list. Within that list, the state disclosed the social worker as a witness, but did not specifically identify her, or any other person, as an expert witness.[3] The list provided the social worker's

---

[3] Nowhere in the witness list does the state label any witness an expert witness. The only apparent distinction is that there is a heading entitled "others." The victim's mother was a constancy witness listed under the "others" heading, but other constancy witnesses, such as Officer Schuler, are not listed under the "others" category. Therefore, it would appear that

6

name, professional title and designation, and place of employment.

During its case-in-chief, the state called the social worker to testify regarding her involvement in this case. During direct examination, the prosecutor asked a series of questions concerning the social worker's education, experience, her role as a social worker at the hospital and her encounter with the victim. We may summarize the social worker's testimony in that regard as follows. The social worker testified that she had a bachelor's degree in psychology and a master's degree in social work. She discussed her employment as a social worker in a nursing home and at two hospitals, and discussed her experience working with sexually abused children, which consisted of ten to fifteen cases. After the social worker had answered those questions, the prosecutor inquired about the theory of delayed disclosure.[4] Despite defense counsel's objections, the

such a distinction is without merit and that the witness disclosure list was not misleading.

[4] The transcript of the social worker's November 8, 2000 testimony in relevant part is as follows:

"[Prosecutor]: Okay. Now, based upon your experience [at two hospitals] and your training in the area of social work, have you ever had the opportunity to come across the term delayed disclosure?

"[The Witness]: Yes.

"[Prosecutor]: Okay. And what is that term?

"[The Witness]: It's—"

At that point, defense counsel objected, stating that there had been "an inadequate foundation as an attempt to take the fact-finding matter out of the hands of the jury" and that the question also called for speculation. The court overruled the objection on the ground that it would not be an intrusion on the fact-finding function of the jury to permit the social worker to define the term "delayed disclosure." She indicated, on the basis of her training and experience as a social worker, that she was familiar with the reasons that a person would delay disclosing incidents such as those at issue in this case.

Thereafter, the colloquy continued in relevant part as follows:

"[Prosecutor]: . . . [H]ave you come across that term in your work as a social worker?

"[The Witness]: Yes.

"[Prosecutor]: Is that a recognized type of behavior of children who are sexually abused?

## court permitted the social worker to testify about delayed disclosure.

"[The Witness]: In my experience, yes, it's—it often happens that there is a delay in response for a variety of—of reasons."

On the basis of the social worker's response, defense counsel objected, arguing that the question called for speculation and was based on an inadequate foundation because, counsel argued, the question being asked was best suited "for the person whose actions are—being questioned . . . ."

Thereafter, the colloquy continued in relevant part as follows:

"[Prosecutor]: In your experience, in whether it be your educational experience or your training in this field of social work, is that a term that is commonly used or, at least, is that a term that's recognized in the field of sexual abuse, that term, being a delayed disclosure or late disclosure?

"[The Witness]: It's a term I've heard in my experience working in hospitals—

"[Prosecutor]: Okay.

"[The Witness]:—in emergency departments.

"[Prosecutor]: All right. And with respect to any—have you received training with respect to children who were sexually abused?

"[The Witness]: Yes.

"[Prosecutor]: And is that an ongoing process, the training that you receive in that area?

"[The Witness]: Yes.

"[Prosecutor]: And during that training, has that concept of delayed disclosure come up during any of the training that you've received in this particular field?

"[The Witness]: Yes.

"[Prosecutor]: Okay. And is it a recognized characteristic with respect to children who claim they've been sexually abused in the area of social work?

"[The Witness]: Yes.

\* \* \*

"[Prosecutor]: Does the relationship of the offender in any way effect the—well, let me put it this way. Does the relationship of—could the relationship of the defendant—of the offender to the victim in any way have any bearing on the time of disclosure the child would make?

"[The Witness]: Yes. . . .

"[Prosecutor]: And in what way?

"The Court: In what way?

"[Prosecutor]: In what way?

"[The Witness]: Because they're afraid of what would happen if they tell. I find that—based upon my experience, I find that children—

"[Defense Counsel]: Objection, Your Honor. Again—

"The Court: I'll allow it. She's qualified to say that.

"[The Witness]: I find that in these types of cases, that children are afraid no matter who the perpetrator is. Whether it be a family member or anybody else, they're afraid."

A

The defendant argues that because the social worker was offered solely to prove constancy of accusation, her testimony regarding the theory of delayed disclosure was inadmissible. Because the defendant did not preserve his claim for appellate review, we decline to afford it review.

The standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. "This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that when an objection to evidence is made, a succinct statement of the grounds forming the basis for the objection must be made in such form as counsel desires it to be preserved and included in the record. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of his objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Citations omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 427–28, 735 A.2d 778 (1999).

Where, however, there is a question as to whether the claim was preserved, as long as it is clear from the record that "the trial court effectively was alerted to a claim of potential error while there was still time for

the court to act"; *Pestey* v. *Cushman*, 259 Conn. 345, 367, 788 A.2d 496 (2002); the claim will be considered preserved. Id., 366–67 (where defense counsel attempted to object to introduction of evidence, but failed to use word "objection," Supreme Court held claim preserved because transcript revealed trial court understood grounds on which counsel objected).

At trial, the defense counsel objected to the testimony of the social worker concerning her understanding of the theory of delayed disclosure. Objecting, defense counsel stated that "[t]here has been an inadequate foundation as an attempt to take the fact-finding matter out of the hands of the jury. . . . With the use of a witness to draw a conclusion based upon the facts or hypothetical, whereas the jury is in the best position to decide." When the state queried the social worker as to the whether a delayed response is a recognized type of behavior in sexually abused children, defense counsel again objected, claiming that there was an "inadequate foundation . . . taking the issue from the jury on the facts."

In further support of his argument, the defendant on appeal asserts that the social worker's testimony as to delayed disclosure was improper for a constancy of accusation witness pursuant to *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc), and that he preserved that issue for our review. Our review of the record, however, reflects that such an objection was not raised at trial.

In *Troupe*, our Supreme Court held that "constancy of accusation witnesses in sexual assault cases would be confined to testify only regarding the fact that the victim complained to them, the time when that complaint was made, and the limited details of the assault, including the identity of the alleged perpetrator as reported to the witness by the victim." *State* v. *Kelly*,

256 Conn. 23, 36, 770 A.2d 908 (2001). None of the defendant's objections concerned whether the testimony of the social worker exceeded the limits of *Troupe*. Instead, the explicit ground asserted for the defendant's objections was that the social worker was not qualified as an expert witness and, therefore, her testimony regarding delayed disclosure violated his constitutional right to a jury trial because it allegedly usurped the jury's function of assessing the credibility of witnesses.

The defendant's objections failed to provide enough background to " 'properly articulate the basis of the objection . . . .' " *State* v. *Bush*, supra, 249 Conn. 427. At no time during the colloquy did the defendant raise *Troupe* or state that the witness was a constancy of accusation witness who could testify only within the parameters of *Troupe*. Compare *State* v. *Romero*, 59 Conn. App. 469, 476–77, 757 A.2d 643 (defense counsel explicitly raised *Troupe* as objection, clearly indicated that witness was constancy witness), cert. denied, 255 Conn. 919, 763 A.2d 1043 (2000). Therefore, the claim, on the basis of that particular argument, was not preserved properly. In the alternative, the defendant requests that the claim be reviewed under the doctrine of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or, in the alternative, the plain error doctrine of Practice Book § 60-5.

We turn first to *Golding* analysis. The defendant does not satisfy the conditions established in *State* v. *Golding*, supra, 213 Conn. 239–40. "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject

to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. "The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). When any one of these conditions is not satisfied, the claim will fail. See *State* v. *Golding*, supra, 240.

The defendant fails to satisfy the second prong of *Golding*. "In Connecticut, it is well established that the constancy of accusation doctrine does not violate a defendant's sixth amendment right to confrontation." (Internal quotation marks omitted.) *State* v. *Thompson*, 71 Conn. App. 8, 13, 799 A.2d 1126 (2002). Although we recognize that the defendant argues that the testimony of the social worker *exceeded* the scope of *Troupe*, we are unpersuaded that this rises to the level of a constitutional claim because, in essence, the defendant attempts to " 'put a constitutional tag on a nonconstitutional evidentiary ruling.' " Id. "Regardless of how the defendant has framed the issue, he cannot clothe an ordinary evidentiary issue in constitutional garb to obtain appellate review. . . . Although this court will review an unpreserved constitutional claim if it satisfies the criteria of *State* v. *Golding*, [supra, 213 Conn. 239–40] . . . unpreserved evidentiary claims are not afforded the same protection." (Citation omitted.) *State* v. *McHolland*, 71 Conn. App. 99, 108, 800 A.2d 667 (2002); see also *State* v. *Joyner*, 225 Conn. 450, 480, 625 A.2d 791 (1993); *State* v. *Romero*, supra, 59 Conn. App. 479–81 (unpreserved claim regarding admission of constancy of accusation testimony does not satisfy second prong of *Golding*).

The defendant also seeks plain error review, alleging that the court's admission of the social worker's testi-

mony concerning delayed disclosure affected the fairness and integrity of and public confidence in the judicial proceedings. The doctrine of plain error is codified in Practice Book § 60-5, which provides in relevant part that this court "shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "[T]o prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Hair*, 68 Conn. App. 695, 705, 792 A.2d 179, cert. denied, 260 Conn. 925, 797 A.2d 522 (2002).

As a preliminary matter, we note that the defendant does not claim that an expert witness cannot testify as to the theory of delayed disclosure. Instead, the defendant claims that the social worker, testifying exclusively as a constancy witness, could not testify as to the delayed disclosure theory. Because she was uniquely qualified to testify in the capacity of both a constancy of accusation witness and an expert witness, and in light of the defendant's specific claim, we must determine whether the social worker was qualified properly as an expert witness.

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions." (Internal quotation marks omitted.) *State* v. *Spigarolo*, 210 Conn. 359, 376, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). "The test for admissibility of expert testimony is whether (1) the witness has a special skill or knowledge

directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Cardany*, 35 Conn. App. 728, 732–33, 646 A.2d 291, cert. denied, 231 Conn. 942, 653 A.2d 823 (1994).[5]

Immediately after beginning the direct examination of the social worker, the state began to lay a foundation

[5] During oral argument, concern by the court was raised as to whether the state was obligated to identify the social worker explicitly as an expert witness prior to trial. After a thorough review, we conclude that the state complied with all requirements of our rules of practice and the Connecticut Code of Evidence. Beyond disclosing the social worker as a witness, the state was under no additional affirmative duty to *identify* her as an expert witness.

With respect to the rules of practice, disclosure of witnesses in criminal matters is governed by Practice Book §§ 40-11 through 40-20. In particular, Practice Book § 40-11 discusses the disclosure of information and materials discoverable by the defendant as of right from the prosecuting authority. Nothing within Practice Book § 40-11, however, requires the state to disclose the names of the expert witnesses. Practice Book § 40-11 (a) (4) provides that the prosecuting authority shall additionally disclose "[a]ny reports or statements of *experts* made in connection with the offense charged including results of physical and mental examinations and of scientific tests, experiments or comparisons which are material to the preparation of the defense or are intended for use by the prosecuting authority as evidence in chief at the trial . . . ." (Emphasis added.)

"The rules of statutory construction apply with equal force to Practice Book rules. . . . A basic tenet of statutory construction is that when a statute [or rule of practice] is clear and unambiguous, there is no room for construction. . . . When we have occasion to construe rules of criminal procedure, they are to be strictly construed to protect the fundamental constitutional right to liberty." (Citations omitted; internal quotation marks omitted.) *State* v. *Genotti*, 220 Conn. 796, 807, 601 A.2d 1013 (1992). Had the legislature intended the prosecuting authority to have specifically identified an expert witness on the witness disclosure list, the legislature would have used the same, or similar, language as that used in Practice Book § 13-4 to require parties in civil matters to *identify* the expert witness and to disclose the subject matter to which the expert will testify. See id.

We also do not find support for the defendant's argument in the Connecticut Code of Evidence. Section 7-2, the relevant code provision, contains a two-pronged requirement. First, the witness must be qualified as an expert. Next, it must be determined that the expected testimony will assist the trier

as to her qualifications. The state inquired about her education, work history and experiences with abused children. On the basis of those answers, the court permitted the state to treat, and to question, the social worker as an expert.

In light of that evidence, we conclude that the court did not abuse its discretion in determining that the social worker was qualified to testify as an expert in the field of social work and about the behavioral characteristics of child sex abuse victims. See *State* v. *Spigarolo*, supra, 210 Conn. 380. At no time did the defendant object as to the sufficiency of the social worker's qualifications. Moreover, defense counsel treated her as an expert and cross-examined her as to her understanding of and testimony concerning the theory of delayed disclosure. Because we conclude that the court did not abuse its discretion in recognizing the social worker as an expert witness and that the defendant has failed to demonstrate that the court's ruling affected the fairness of and public confidence in the judicial proceedings, we conclude that the court did not commit plain error.

B

The defendant argues that even if the social worker was qualified properly as an expert witness, her testimony was improper because it invaded the fact-finding province of the jury.

Because, as we stated previously, the defendant objected to the social worker's testimony on the ground that it removed the fact-finding function from the jury, that claim was preserved properly at trial.

We disagree with the defendant's contention that the social worker's expert testimony usurped the jury's function of assessing the credibility of witnesses. Our

of fact in understanding the evidence or in determining a fact in issue. Neither of those prongs require identification or disclosure of an expert witness.

Supreme Court has stated that "[w]here the defendant has sought to impeach the testimony of the minor victim based on inconsistencies, partial disclosures, or recantations relating to the alleged incidents, the state may present *expert* opinion evidence that such behavior by minor sexual abuse victims is common." (Emphasis added.) Id., 377. That is, our Supreme Court has "recognized the critical distinction between admissible *expert* testimony on general or typical behavior[al] patterns of minor victims and inadmissible testimony directly concerning the particular victim's credibility." (Emphasis added; internal quotation marks omitted.) *State* v. *Grenier*, 257 Conn. 797, 806, 778 A.2d 159 (2001).

After the social worker was qualified as an expert, the state questioned her on her understanding of the theory of delayed disclosure. The rationale for allowing testimony in the state's case-in-chief to explain alleged reporting delays is analogous to the rationale for permitting constancy of accusation testimony.[6] Constancy of accusation testimony "is allowed, in part, to satisfy the jury that the victim behaved reasonably in light of the alleged assault. If the victim's report had been immediate as would be expected . . . the jury might logically infer that the victim's trial testimony more probably was truthful. . . . *On the other hand,* [a] delayed statement [might undermine] the victim's credibility because it was considered obvious that for one who claims to have been [sexually abused] to have long kept silence about it, would, if unexplained, weaken the force of

---

[6] The constancy of accusation doctrine states that "a person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes." *State* v. *Troupe*, supra, 237 Conn. 304.

any testimony that [he or] she might give in court, in support of a prosecution for such an offense." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Cardany,* supra, 35 Conn. App. 732. Because it is only natural "for a jury to discount the credibility of a victim who did not immediately report alleged incidents . . . testimony that explains to the jury why a minor victim of sexual abuse might delay in reporting the incidents of abuse should be allowed as part of the state's case-in-chief." Id. Expert testimony, concerning the behavioral patterns of children who have been sexually abused, is permissible. We therefore conclude that the court did not abuse its discretion.

## II

Next, we turn to the defendant's claim that the court improperly admitted the victim's July 21, 1999 written statement to the police. Specifically, the defendant argues that the court could not properly admit the statement under any of the state's three asserted theories, which included (1) a prior inconsistent statement pursuant to *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986),[7] and *State* v. *Wearing,* 46 Conn. App. 741, 701 A.2d 41, cert. denied, 243 Conn. 937, 702 A.2d 645 (1997),[8] (2) past recollection recorded or (3) pursuant to footnote 19 of *Troupe.*[9] Consequently, the defendant

---

[7] *State* v. *Whelan,* 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

[8] *State* v. *Wearing,* 46 Conn. App. 741, 701 A.2d 41, cert. denied, 243 Conn. 937, 702 A.2d 645 (1997).

[9] *State* v. *Troupe,* supra, 237 Conn. 304 n.19, provides: "Of course, the rule that we adopt today does not affect those cases in which the details of a sexual assault complaint are otherwise admissible, as, for example, in the case of a spontaneous utterance or in the case of a prior consistent statement admitted to rebut a claim of recent fabrication. Moreover, we recognize that the defendant, on cross-examination of a constancy witness, may elicit details of the victim's complaint for the purpose of demonstrating inconsistencies between the victim's trial testimony about the sexual assault and the victim's report of the incident. In such cases, the effect of our

argues that the admission of the statement violated his right to confrontation under the sixth amendment[10] to the federal constitution.[11] We conclude that the statement was admitted properly pursuant to *Whelan* and *Wearing* and, therefore, affirm the court's ruling.[12]

The defendant argues that the written statement was not offered by the state as a prior inconsistent statement, relative to the victim's in-court testimony, pursuant to *Whelan* and *Wearing*. Moreover, the defendant argues that instead of offering the victim's prior recorded statement as substantive evidence against her, the state offered it to bolster her credibility as a result of her memory lapses on cross-examination. We disagree.

"The admissibility of . . . a prior inconsistent statement pursuant to *Whelan*, is a matter within the wide discretion of the trial court. . . . On appeal, the exercise of that discretion will not be disturbed except on a showing that it has been abused." (Citation omitted.) *State* v. *Newsome*, 238 Conn. 588, 596, 682 A.2d 972 (1996).

In *Whelan*, our Supreme Court adopted a rule "allowing the substantive use of prior written inconsistent statements, signed by the declarant, who has personal knowledge of the facts stated, when the declarant

modification of the constancy of accusation doctrine is merely to shift the timing of the introduction into evidence of the details."

[10] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[11] Specifically, the defendant argues that his sixth amendment right was violated because he allegedly had no opportunity to cross-examine the victim when she provided the police with a written statement and because there was allegedly no indication that the statement was given under oath.

[12] Because we have determined that the admission of the July 21, 1999 statement was proper pursuant to *Whelan*, we do not need to reach the merits of the defendant's other arguments concerning his claim. Additionally, a review of the trial transcript reflects that the court's instruction to the jury indicated that the statement was admitted solely as a *Whelan* statement.

testifies at trial and is subject to cross-examination." *State* v. *Whelan*, supra, 200 Conn. 753. In *State* v. *Wearing*, supra, 46 Conn. App. 741, we further clarified the parameters of what constitutes an "inconsistency." There, we held that "[a] statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposed assertions have been made. Thus, inconsistencies may be found in changes in position and they may also be found in denial of recollection. . . .

"Whether there are inconsistencies between the two statements is properly a matter for the trial court. . . . Inconsistencies may be shown not only by contradictory statements but also by omissions. In determining whether an inconsistency exists, the testimony of a witness as a whole, or the whole impression or effect of what has been said, must be examined." (Internal quotation marks omitted.) Id., 752–53. Whether a prior statement is in fact inconsistent is a matter to be determined within the court's discretion. *State* v. *Bruno*, 236 Conn. 514, 554, 673 A.2d 1117 (1996).

Applying the *Whelan* test to the prior written statement in question, we must analyze whether the written statement was inconsistent with the statements provided on direct examination. In its brief, the state indicates approximately twenty instances of the victim's inability to recall material facts during direct examination and cross-examination. Pursuant to *Wearing*, inconsistencies for *Whelan* purposes can be " 'found in [the] denial of recollection.' " *State* v. *Wearing*, supra, 46 Conn. App. 753. The victim's inability to recall material facts, then, clearly satisfies the inconsistency element. Additionally, the victim's July 21, 1999 statement was written and signed by the victim, who had personal knowledge of the facts stated within the writing and was subject to cross-examination. Therefore, all of the *Whelan* requirements were satisfied.

Despite the statement's compliance with *Whelan*, the defendant argues that the timing of the introduction of the statement was improper because it would have been admissible only had the victim been unable to recall material facts at the time she testified on *direct* examination as opposed to *redirect* examination. We disagree with the defendant's argument. The defendant cites no case law in support of his proposition. Recently, in fact, we held that a *Whelan* statement was admitted properly where it was offered by the state during *redirect* examination of the victim. See *State* v. *Trotter*, 69 Conn. App. 1, 18–20, 793 A.2d 1172, cert. denied, 260 Conn. 932, 799 A.2d 297 (2002).

Because inconsistencies may be found in the denial of recollection, we conclude that the court did not abuse its discretion in finding that the victim's testimony was inconsistent with her July, 21, 1999 statement to the police. It was therefore admissible under *Whelan*.

### III

The defendant's final claim is that the court improperly restricted defense counsel's cross-examination of the state's key witnesses in violation of his constitutional right to confrontation. That claim was preserved properly at trial. Specifically, the defendant argues that the court improperly denied him the opportunity to make a requested offer of proof while cross-examining the victim's mother and again during the cross-examination of the social worker. The defendant argues, as to each, that the offers of proof were relevant to show motive and inconsistency pertaining to the victim's testimony.

"Offers of proof are allegations by the attorney in which he represents to the court that he could prove them if granted an evidentiary hearing." *State* v. *Tillman*, 220 Conn. 487, 511, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876

(1992) (*Berdon, J.*, dissenting). The purpose of an offer of proof has been well established by our courts. "First, it informs the court of the legal theory under which the evidence is admissible. Second, it should inform the trial judge of the specific nature of the evidence so that the court can judge its admissibility. Third, it creates a record for appellate review." (Internal quotation marks omitted.) *State* v. *Walsh*, 67 Conn. App. 776, 786–87, 789 A.2d 1031, cert. denied, 260 Conn. 906, 795 A.2d 546 (2002), quoting *State* v. *Jenkins*, 56 Conn. App. 450, 456, 743 A.2d 660, cert. denied, 252 Conn. 947, 747 A.2d 523 (2000).

A trial court cannot preclude a defendant from making an offer of proof. See *State* v. *Zoravali*, 34 Conn. App. 428, 433, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). Therefore, the court's denials of permission for him to make offers of proof were improper. That is not the end of our analysis, however. We must determine whether the court's denials of the defendant's requests to make offers of proof violated his constitutional rights. In making that determination, we examine the underlying rulings of the court with regard to the defendant's cross-examination of the victim's mother and the social worker.

"Our standard of review of a claim that the court improperly limited the cross-examination of a witness is one of abuse of discretion." (Internal quotation marks omitted.) *State* v. *Walsh*, supra, 67 Conn. App. 793–94. "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." *State* v. *Aponte*, 249 Conn. 735, 750, 738 A.2d 117 (1999).

"The sixth amendment to the [United States] constitution guarantees the right of an accused in a criminal

prosecution to confront the witnesses against him. . . . The primary interest secured by confrontation is the right to cross-examination . . . and an important function of cross-examination is the exposure of a witness' motivation in testifying. . . . In order to comport with the constitutional standards embodied in the confrontation clause, the trial court must allow a defendant to expose to the jury facts from which [the] jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. . . . In determining whether a defendant's right of cross-examination has been unduly restricted, we consider the nature of the excluded inquiry, whether the field of inquiry was *adequately covered by other questions* that were allowed, and the overall quality of the cross-examination viewed in relation to the issues actually litigated at trial." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Hunter*, 62 Conn. App. 767, 772, 772 A.2d 709, cert. denied, 256 Conn. 925, 776 A.2d 1144 (2001). "This right may include impeaching or discrediting [state witnesses] by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception." (Citation omitted; internal quotation marks omitted.) *State* v. *Barrett*, 43 Conn. App. 667, 675, 685 A.2d 677, cert. denied, 240 Conn. 923, 692 A.2d 819 (1997).

"The confrontation clause does not, however, suspend the rules of evidence to give the defendant the right to engage in unrestricted cross-examination. . . . Only relevant evidence may be elicited through cross-examination . . . [and] [t]he trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Peczynski*, 50

Conn. App. 51, 55, 716 A.2d 149, cert. denied, 247 Conn. 936, 722 A.2d 1217 (1998).

Once it is established that the court's ruling on the scope of cross-examination is not constitutionally defective, this court will apply "[e]very reasonable presumption . . . in favor of the correctness of the [trial] court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) Id.

The relevant inquiry, therefore, is whether the court's rulings, which excluded the offers of proof, resulted in the exclusion of extrinsic evidence that so significantly bore on the motive, bias or interest of the victim that the exclusions infringed on the defendant's right to confrontation and, consequently, exceeded the court's broad discretion.

A

With those principles in mind, we review first the court's denial of defendant's request to make an offer of proof during the cross-examination of the victim's mother.

In his brief, the defendant cites to that portion of the trial transcript concerning an inquiry into the planned living arrangements of the victim, her family and the defendant without discussing how the offer of proof would have illustrated a motivation for the witness to lie.[13] The state objected, claiming that any answer by

---

[13] The following colloquy occurred in relevant part during the defendant's cross-examination of the victim's mother:

"[Defense Counsel]: If you had moved into the house [with the defendant], your daughter wouldn't have seen your parents as often as she did in the past; is that right?

"[Prosecutor]: Objection, Your Honor.

"The Court: What do you claim the relevance of this is?

"[Defense Counsel]: The relevance is, Your Honor, the state on direct examination was able to talk about the living arrangements—or planned living arrangements of the—of the parties. The defense is showing the—the same thing to complete the picture. What would have happened if they

the witness would have been speculative. The court sustained the objection on the ground that the information was not relevant.

Importantly, the defendant does not discuss in his brief what the offer of proof was intended to show and fails to elaborate on how or why the offer of proof would have illustrated the motive, bias or interest of the victim. In its brief, the state surmises that the defendant's offer of proof would have shown that the victim may have had the motivation to fabricate the attack to prevent her parents from moving into the same home with the defendant and, consequently, the victim would have continued to live in close proximity to her grandparents. The court, presented with defense counsel's inquiry into "[w]hat would have happened if [the victim's family] had moved [into the same home as the defendant and] the effect it would have had on the . . . family and the relationships," as a means to prove motivation of the victim, presumably to fabricate the attack, determined that the line of questioning was speculative and irrelevant.

had moved in [with the defendant], the effect it would have had on the— on the family and the relationships.

"The Court: I haven't—

"[Prosecutor]: It's speculative, Your Honor.

"The Court:—seen it—anything. I haven't seen anything in any of the questions so far. I believe it's gone in deep enough. Other than that, it's collateral and not relevant to what we're here for. Okay. Get back on track here.

"[Defense Counsel]: Your Honor, can I make an offer of proof?

"The Court: No, I—the—the issue is sexual assault in the first degree—

"[Defense Counsel]: Your Honor, the—

"The Court:—risk of injury.

"[Defense Counsel]: The motivation.

"The Court: I just want to keep it on track.

"[Defense Counsel]: But the motivations of the parties—

"The Court: The motivation—the reason this woman was on the [witness] stand—

"[Defense Counsel]:—are important."

We disagree with the court's determination that the line of questioning was irrelevant and speculative. One of the important functions of cross-examination is the exposure of a witness' motivation to testify. Certainly, any testimony elicited by the victim's mother concerning the potential for the victim to fabricate a story of sexual abuse, in an effort to prevent an upcoming move into the same home with the defendant, would expose an important motivation that the jury should have been permitted to consider. Therefore, "[w]e must determine whether the court's limitation of the defendant's cross-examination of the [witness] was harmless beyond a reasonable doubt. There are several factors that the court considers in the determination of such an inquiry. The most important factor is an examination of the impact such evidence would have on the trier of fact and the result of the trial." *State* v. *Horrocks*, 57 Conn. App. 32, 39, 747 A.2d 25, cert. denied, 253 Conn. 908, 753 A.2d 941 (2000).

After reviewing the record, we conclude that the court's improper ruling was harmless beyond a reasonable doubt. Despite the court's ruling, the jury was given the opportunity to hear the defendant during closing argument discuss the victim's motivation to fabricate the story. At that time, defense counsel stated: "What could be gained by—by making up or imagining this happened? Well, we know that the two families, that is [the victim's] family and her—her mother's parents lived in the same duplex. Right in the same building. And we know that she was close to her grandparents. And we know that they continue to live in that duplex. . . . If [the victim] had moved . . . she would have left her grandparents behind . . . [s]he wouldn't have seen the grandparents on a daily basis." Although the court's ruling was improper, it was harmless beyond a reasonable doubt.

## B

Next, we turn to the offer of proof concerning the social worker. In support of his argument, the defendant refers to his colloquy with the court during cross-examination of the social worker.[14] In summary, the court precluded the defendant from questioning the social worker as to the number of times that the victim reported to her that the defendant had touched the victim because the witness was deemed, at that time, a constancy of accusation witness. The trial transcript reflects that the defendant argued that that line of questioning concerned the consistencies or inconsistencies in the victim's testimony.

[14] The following colloquy occurred in relevant part during the defendant's cross-examination of the social worker:

"[Defense Counsel]: How many times did [the victim] indicate to you that she was touched by—by her uncle?

"[Prosecutor]: Object, Your Honor.

"The Court: No, I don't think I can allow that without opening the door to the state. Do you disagree or do you agree? I'd like an answer to that.

"[Defense Counsel]: Yes, Your Honor.

"The Court: You what?

"[Defense Counsel]: Yes, that—that would allow the state to cross-examine.

"The Court: Exactly. And I will explain that to you later. That a witness here for purposes of constancy of accusation is [to testify] only as to the date, the time, the place and the person. [The witness] cannot continue to testify as to what was told to them. Now, if there's an inquiry as to how many times, whatever, that opens the door, and that person may respond to the state. Do you have anything else?

"[Defense Counsel]: Yes, Your Honor.

"The Court: What would it be?

"[Defense Counsel]: How many times did . . . . The same question, Your Honor.

"The Court: I just thought I went through that.

* * *

"[Defense Counsel]: Can I make an offer of proof on this?

"The Court: I don't think so. I think the law is clear. Your next offer on that would be at the Appellate Court.

"[Defense Counsel]: This would relate to the constancy or inconstancy that the defense would claim is in the case. That the inconsistencies—"

Our review of the record convinces us that the preclusion of any cross-examination of the witness concerning the number of times that the victim reported that the defendant had touched her improperly prohibited inquiry into a legitimate area of relevant concern to show inconsistency in the victim's testimony. Consequently, we again must determine whether the court's limitation of the defendant's cross-examination of the witness was harmless beyond a reasonable doubt. In this case, the nature of the excluded inquiry was not central to whether the victim had provided consistent testimony. Although the credibility of the victim's testimony is important, that was not the only opportunity for the defendant to impeach the witness or to show inconsistencies. See *State* v. *Peczynski*, supra, 50 Conn. App. 56–57 (exclusion of videotape purporting to show hostility, bias of state's only witness toward defendant did not preclude defendant from adequate cross-examination of that witness because defendant still had ample opportunity to do so). The jury had before it other evidence from which it could have drawn reasonable inferences or inconsistencies. That proof included the written report of the social worker's interview with the victim at the hospital. In the report, the victim reported to the social worker that the defendant had "repeatedly" touched her throughout the night.

The defendant was allowed the minimum cross-examination so as to expose to the jury the facts from which the jurors, as sole triers of facts and credibility, could appropriately draw inferences relating to the reliability of the state's witnesses. Therefore, the field of inquiry was covered adequately by the admission of the written report of the social worker's interview with the victim, and any improper limitation of cross-examination was harmless. Compare *State* v. *Horrocks*, supra, 57 Conn. App. 40–41 (limiting cross-examination to sub-

ject matter of defendant's consent defense harmful error).

The judgment is affirmed.

In this opinion the other judges concurred.